758 S.E.2d 483

**Dr. Cynthia HOLMES, M.D., Appellant,**

v.

**EAST COOPER COMMUNITY HOSPITAL, INC., and HealthSystem Medical, Inc., Respondents.**

Appellate Case No. 2011–198092; Appellate Case No. 2012–209666.

No. 27370.

Supreme Court of South Carolina.

Heard March 19, 2013.

Filed March 26, 2014.

Rehearing Denied June 13, 2014.

Chalmers Carey Johnson, of Tacoma, Washington, for Appellant.

Erskine Douglas Pratt–Thomas, Lindsay Kathryn Smith–Yancey, and Daniel Simmons McQueeney, Jr., all of Pratt–Thomas Walker, PA, of Charleston, for Respondents.

Chief Justice TOAL.

In this consolidated appeal, Dr. Cynthia Holmes, M.D. (Appellant) asks this Court to reverse the circuit court's decisions granting summary judgment in favor of East Cooper Community Hospital, Incorporated, and Tenet HealthSystem Medical, Incorporated (collectively, Respondents), and sanctioning her pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act, section 15–36–10 of the South Carolina Code (the FCPSA). We affirm the circuit court's

grant of summary judgment in favor of Respondents and the award of sanctions against Appellant.

## FACTS/PROCEDURAL BACKGROUND

Respondent East Cooper Community Hospital, Incorporated, is a subsidiary of Respondent Tenet HealthSystem Medical, Incorporated, and owns, operates and does business as East Cooper Medical Center (the Hospital), a private hospital in Mount Pleasant, South Carolina. Appellant is a doctor, who currently practices ophthalmology in Sullivan's Island, South Carolina, and was previously a member of the consulting medical staff of the Hospital.[1] During the relevant time period, Appellant was a member of the Hospital's medical consulting staff, appointed in two-year increments. In October 2006, Appellant submitted a reappointment application seeking advancement in medical staff category and clinical privileges to perform surgery on the eye. The Hospital's credentialing committee found Appellant unqualified for the level of privileges she requested. Appellant received administrative review of this decision, and was ultimately reappointed as consulting medical staff for another two-year term. In October 2008, Appellant submitted another reappointment application requesting advancement. This time, the Hospital determined that Appellant's application was incomplete and requested she voluntarily resign from the medical staff without appellate rights under the medical staff bylaws. The current appeal stems from these privileging decisions.

By way of background, this case represents the fourth lawsuit filed by Appellant against Respondents regarding credentialing decisions.[2] In each case, Appellant has alleged breach of contract and breach of the covenant of good faith and fair dealing arising out of Respondents' alleged mishandling of Appellant's medical staff privileging applications. Appellant filed her first lawsuit against Respondents in federal court in 1999, alleging violations of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1, et seq. (2004), and pendant state law

---

1. Appellant is also a licensed attorney and member of the South Carolina Bar.

2. Appellant has also brought two legal malpractice claims against the attorneys who represented her in the first two lawsuits.

claims, including *inter alia,* claims for wrongful termination of hospital privileges, breach of contract, breach of contract accompanied by a fraudulent act, civil conspiracy, and unfair trade practices. That lawsuit ended when the district court granted summary judgment in favor of Respondents on the federal claim, and dismissed the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) (providing a court may decline to exercise supplemental jurisdiction over state law claims in cases where the district court has dismissed all claims over which it has original jurisdiction).[3]

On May 16, 2000, Appellant again challenged the Hospital's credentialing decisions, this time in circuit court. On January 20, 2003, the parties executed a settlement agreement in the second lawsuit (the Settlement Agreement). The Settlement Agreement provided, in part, that Appellant be reappointed to the consulting medical staff position from 2002 until 2004 with "the right to apply for a change in status in accordance with the Bylaws."

In 2005, Appellant filed a third lawsuit against Respondents alleging, *inter alia,* that Respondents breached the Settlement Agreement and the covenant of good faith and fair dealing in reviewing Appellant's applications for medical staff privileges in 2002 and 2004. More specifically, Appellant alleged that she and Respondents were parties to a contractual agreement "the terms of which are set forth in the Medical Staff Bylaws, Rules and Regulations, and related documents."

The circuit court ultimately granted summary judgment in favor of Respondents in the 2005 lawsuit on May 23, 2007. In addressing the allegations relating to Appellant's 2004 application, Circuit Court Judge R. Markley Dennis, Jr., stated, in pertinent part:

> The [Appellant's] Amended Complaint seeks judicial determination of whether the decisions regarding her credentialing and privileges at East Cooper Hospital were reasonable and in compliance with the Hospital's Bylaws. Specifically,

---

3. Appellant filed a pro se appeal from the district court's decision in the United States Court of Appeals for the Fourth Circuit, which was dismissed on November 17, 2000. She subsequently sought a writ of certiorari from the United States Supreme Court, which was denied on October 1, 2001.

she requests the Court to review whether the failure to process and consider her application for associate status and surgical privileges, her reappointment to the consulting staff, and the denial of an administrative hearing were reasonable decisions made in accordance with the Bylaws. The [Appellant's] claims all arise out of the peer review process at [the Hospital] and, as such, are not subject to judicial review. The Court does not have jurisdiction to determine these issues and [Appellant] has presented no evidence or reason to persuade the Court to depart from the long-standing principle that such actions are not subject to judicial review.

Judge Dennis explained further:

[Appellant] argues that the Court does have jurisdiction over this matter based on *Lee v. Chesterfield General Hospital,* 289 S.C. 6, 344 S.E.2d 379 (Ct.App.1986). The Court declines to adopt [Appellant's] interpretation of the *Lee* decision as applicable to the matter herein. In *Lee* the Court confirmed the decision reached in *Gowen* [sic][4] but found subject matter jurisdiction where [Appellant] did not seek to conduct a judicial review of internal hospital rules, but claimed that the Bylaws were imposed in furtherance of a conspiracy, the purpose of which was to injure [Appellant]. *Lee[,* 289 S.C.] at 10 [344 S.E.2d 379]. Here [Appellant] asks the Court to review the basis for the credentialing decisions and substitute its judgment for the Hospital and its review committees by determining that the credentialing decisions were made inappropriately. This is precisely the type of intervention that [the] *Strauss,*[5] *Gowen* [sic], and *Wood*[6] decisions sought to prevent.[7]

---

4. *Gowan v. St. Francis Comty. Hosp.,* 275 S.C. 203, 268 S.E.2d 580 (1980).

5. *Strauss v. Marlboro Cnty. Gen. Hosp.,* 185 S.C. 425, 194 S.E. 65 (1937).

6. *Wood v. Hilton Head Hosp., Inc.,* 292 S.C. 403, 405, 356 S.E.2d 841, 842 (1987).

7. Appellant appealed this order to the court of appeals on three separate occasions, and the court of appeals dismissed and remitted the case each time.

In a subsequent order, dated August 6, 2009, sanctioning Appellant pursuant to the FCPSA, Judge Dennis stated:

Despite clear case law to the contrary, [Appellant] filed this action seeking judicial determination of whether the decisions regarding her credentialing and privileges were reasonable and in compliance with the Hospital's Bylaws. Specifically, she sought the Court to review whether the failure to process and consider her application for associate status and surgical privileges, her reappointment to the consulting staff, and the denial of an administrative hearing were reasonable decisions made in accordance with the Bylaws. [Appellant's] claims all arose out of the peer review process and, under South Carolina law, are not subject to judicial review, and [Appellant] presented no evidence or reason to persuade the Court to depart from this longstanding principle.

On April 26, 2010, Appellant filed her complaint in the instant action,[8] alleging Respondents breached their contract and covenant of good faith and fair dealing by "attempting (successfully to date) to block [Appellant] from being able to seek review of its decision to deny her application for advancement in staff privileges in violation of the letter and the spirit of the applicable bylaws." As a result, Appellant submitted that she "suffered actual damages and special damages, in the form of lost income, and loss of business to her practice, as she has been unable to admit any patients to the hospital to perform medical procedures from 2007 ... and continuing presently." Appellant sought review of the specific decisions of the Hospital to deny her application for surgical privileges in 2006 and to reject her 2008 application as incomplete.

On September 17, 2010, Respondents filed an answer and counterclaims for abuse of process and malicious prosecution. As part of their Answer, Respondents also moved for sanctions under the FCPSA.

On September 24, 2010, Respondents moved for judgment on the pleadings pursuant to 12(c), SCRCP.[9] In their motion,

---

8. Appellant is represented in this litigation by the same counsel who represented her in the 2005 litigation.

9. Rule 12(c), SCRCP, provides:

Respondents argued that, based on the pleadings, the circuit court lacked jurisdiction to consider Appellant's claims. A hearing was convened before Judge Dennis to hear arguments on Respondents' motion on December 16, 2010. At the hearing, Judge Dennis orally denied the motion on the basis that it would be more appropriately considered as a motion for summary judgment:

> I think the safest for everybody, for review purposes is to have this matter resolved not on a [m]otion on the pleadings but on a [m]otion for summary judgment. I just am not—I understand the jurisdictional issue. There are matters, though, that I—I really would have to rely on certain things outside of the context of the pleadings.

In denying the motion, Judge Dennis not only warned Appellant's counsel against engaging in frivolous proceedings, but took care to reiterate he was not making any ruling with respect to the merits of Respondents' claims that the circuit court lacked subject matter jurisdiction:

> I don't quarrel with anything you've [Respondents' counsel] said. I would remind everybody—I don't have to, we have very competent lawyers involved in this, but if this is another effort that really is nothing more than—could be considered frivolous, though I am not making that finding now, and I would not hesitate, nor am I sure any other judge would hesitate to impose sanctions.
>
> So I—I just remind everybody what we're doing here because I think it has to be looked at in a real sense. I think that the [sic] there are things, [Appellant's counsel],— no disrespect to you, sir, but—I understand what you say sounds like that might be creative lawyering, too, by using semantics—and I don't think that it is there. That's not for me to judge today.

---

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

I agree with you that it would be a mistake to grant this on the basis of the pleadings. So that's the reason that I am denying it-not anything about the merits.

Respondents filed a motion to reconsider pursuant to Rule 59(e), SCRCP. Judge Dennis held a hearing on this motion on March 8, 2011, and orally denied the motion. On March 9, 2011, Judge Dennis denied this motion in a form order.

On June 6, 2011, Respondents filed a motion for summary judgment on several grounds, including that the circuit court lacked subject matter jurisdiction to review the medical staff privileging decisions of a private hospital. A hearing was convened on July 8, 2011, before the Honorable Kristi Lee Harrington. By order dated July 29, 2011, Judge Harrington entered summary judgment in favor of Respondents (the Summary Judgment Order). In the Summary Judgment Order, Judge Harrington found that the circuit court lacked subject matter jurisdiction to review the Hospital's privileging decisions with respect to Appellant.

On August 8, 2011, Respondents filed a motion for sanctions under the FCPSA, arguing, *inter alia*, that the circuit court should sanction Appellant for "seeking adjudication of claims over which this Court does not have jurisdiction" and "raising issues which have been previously adjudicated against [Appellant] and in [Respondents'] favor."

On August 24, 2011, Appellant appealed the Summary Judgment Order. Appellant also filed a response to Respondents' motion for sanctions in the circuit court, arguing that the circuit court could not grant sanctions against her where the court had previously denied Respondents' motion to dismiss; that she was competently represented by counsel, and therefore, immune from sanctions; and that Respondents' motion was premature because of the pending appeal of the Summary Judgment Order.

On November 22, 2011, Judge Harrington heard arguments concerning Respondents' motion for sanctions. During the hearing, Appellant argued that the FCPSA unconstitutionally holds pro se litigants to a reasonable attorney standard and deprives litigants of due process by requiring the circuit court to report any violation of the FCPSA directly to this Court.

No other constitutional issues were raised by Appellant during this hearing.

By order dated February 1, 2012, Judge Harrington awarded sanctions against Appellant for violating the FCPSA (the Sanctions Order) by "initiating and continuing this litigation despite this Court's lack of subject matter jurisdiction, despite a prior ruling against [Appellant] that this Court lacks subject matter jurisdiction, and despite being sanctioned for arguing that this Court has subject matter jurisdiction in a previous case based on the very same allegations." Judge Harrington further found that Appellant violated the FCPSA by initiating and continuing "the present action despite [Respondents'] compliance with the plain language of [the Hospital's] By-laws." Judge Harrington also noted:

> While [Appellant] contends that this previous circuit court order is not binding precedent and that Judge Dennis's decision in this instance was incorrect, [Appellant] ignores that "[u]nder the doctrine of collateral estoppel, when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Carman v. S.C. Alcoholic Beverage Control Comm'n*, 317 S.C. 1, 6, 451 S.E.2d 383, 386 (1994). [Appellant] failed to offer any argument as to why Judge Dennis's decision does not collaterally estop her in this action. Moreover, [Appellant's] argument on this point emphasizes her willingness to re-litigate the case she lost in 2005.

Therefore, Judge Harrington ordered Appellant to pay Respondents' attorneys' fees and other costs associated with this action in the amount of $53,447.15 and enjoined Appellant from any future filings against Respondents absent the posting of a bond to pay Respondents' attorneys' fees and costs in the event Respondents prevail in future litigation and upon a showing that Respondents would be entitled to such fees and costs.[10]

---

10. Noticeably, the Sanctions Order did not address any constitutional arguments made by Appellant.

On February 21, 2012, Appellant filed a motion to reconsider the Sanctions Order.[11] Appellant appealed the Sanctions Order on March 6, 2012. On March 7, 2012, Judge Harrington denied Appellant's motion to reconsider the Sanctions Order. On March 21, 2012, Appellant filed an amended notice of appeal of the Sanctions Order after the circuit court denied her motion to reconsider.

On May 24, 2012, this Court certified these cases for review pursuant to Rule 204(b), SCACR, and consolidated Appellant's two appeals for purposes of briefing and oral argument.

## ISSUES

**I.** Whether the circuit court erred in awarding sanctions against Appellant?

**II.** Whether the FCPSA is unconstitutional?

## ANALYSIS

### I. Successive "Motions to Dismiss"

■ Appellant argues that because the hospital failed to prevail on its first and second "motions to dismiss" for lack of subject matter jurisdiction before Judge Dennis, South Carolina law prohibits a finding of frivolity where the case was ultimately dismissed on a third, identical "motion to dismiss" before a different judge, Judge Harrington. On the other hand, Respondents contend that the circuit court's ruling with respect to Respondents' motion for judgment on the pleadings and summary judgment motion does not preclude sanctions under the FCPSA.

First, we find that Appellant mischaracterizes the nature of Respondents' motions. The characterization of Respondents' motions as "motions to dismiss" contradicts the Record. Initially, Respondents submitted a motion for judgment on the pleadings to Judge Dennis, followed not by a second "motion to dismiss," but a subsequent motion to reconsider the denial of that motion. In discussing the motion for judgment on the pleadings, Judge Dennis explicitly stated that he was not

---

11. In her motion to reconsider, Appellant sought a ruling on her prior constitutional argument that the "reasonable attorney" standard in the FCPSA violates due process. However, for the first time, Appellant argued that the FCPSA inhibits free speech.

denying the motion on the merits, finding instead that summary judgment would be the proper avenue to consider Respondents' arguments. Therefore, Respondents filed a motion for summary judgment, which Judge Harrington ultimately granted in their favor. This was not a third motion to dismiss, as Appellant claims.

Appellant's attempt to characterize these motions as successive "motions to dismiss" is a veiled effort to make the facts of this case conform to those in *Hanahan v. Simpson*, 326 S.C. 140, 485 S.E.2d 903 (1997), as Appellant relies on *Hanahan* for the proposition that sanctions were inappropriate based on the posture of her case. In that case, the Court, acting under a prior version of the FCPSA, reversed the award of sanctions after the sanctioned party prevailed on a summary judgment motion, but lost the case after a full trial on the merits. *Id.* at 158, 485 S.E.2d at 913. The Court adopted the rationale "that a party who survives pre-trial motions to dismiss and for summary judgment are not subject to sanctions after a trial on the surviving claims," stating that "[t]he theory behind these cases is that if a case is submitted to the jury, it cannot be deemed frivolous." *Id.* at 157, 485 S.E.2d at 912 (citation omitted). Thus, by claiming that she survived successive motions to dismiss, Appellant attempts to utilize *Hanahan* to avoid sanctions.

However, the present case is distinguishable from *Hanahan* in that, here, Appellant did not "survive" a pre-trial motion to dismiss or for summary judgment and never made it to a trial on the merits. Rather, Judge Dennis expressly deferred a decision on the merits until such motion was in the proper procedural posture. Therefore, because Judge Harrington granted Respondents' motion for summary judgment and Appellant's case was never tried on the merits, Appellant is not immune from sanctions under *Hanahan's* rationale.

Nevertheless, *Hanahan* was decided in 1997 under a prior version of the FCPSA. At that time, the FCSPA provided:

Any person who takes part in the procurement, initiation, continuation, or defense of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney's fees and court costs of the other party if:

(1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and

(2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.

S.C.Code Ann. § 15–36–10 (2005). Under the prior version of the Act, the party seeking sanctions bore the burden of proving:

(1) the other party has procured, initiated, continued, or defended the civil proceedings against him;

(2) the proceedings were terminated in his favor;

(3) the primary purpose for which the proceedings were procured, initiated, continued, or defended was not that of securing the proper discovery, joinder of parties, or adjudication of the civil proceedings;

(4) the aggrieved person has incurred attorney's fees and court costs; and

(5) the amount of the fees and costs set forth in item (4).

*Id.* § 15–36–40.

In 2005, the General Assembly substantially amended section 15–36–10, and repealed sections 15–36–20 through –50. *See* Act No. 27, 2005 S.C. Acts 114, § 5 (effective July 1, 2005) (revising § 15–36–10); Act No. 27, 2005 S.C. Acts 121, § 12 (effective March 21, 2005) (repealing §§ 15–36–20 through – 50). Section 15–36–10 now reads, in pertinent part:

At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.

S.C.Code Ann. § 15–36–10(C)(1) (Supp.2012).

Under the plain terms of this new section of the FCPSA, *Hanahan's* reasoning as to the disposition of pre-trial motions no longer applies. *See Hodges v. Rainey*, 341 S.C. 79, 87, 533 S.E.2d 578, 582 (2000) ("When the language of a statute is clear and explicit, a court cannot rewrite the statute and inject matters into it which are not in the legislature's language, and

there is no need to resort to statutory interpretation or legislative intent to determine its meaning.") (citation omitted). Rather, sanctions may be awarded under section 15–36–10 regardless of whether or not the case has been tried to verdict so long as the trial court finds by a preponderance of the evidence that the party should be sanctioned under the terms of the FCPSA. S.C.Code Ann. § 15–36–10(C).

Here, Appellant lost at the summary judgment stage. Therefore, while the circuit court erred in relying on *Hanahan*, the circuit court did not err in assessing sanctions pursuant to the FCPSA at that point.

## II. Merits of Appellant's Case under Existing Law

■ However, Appellant further argues that her position on subject matter jurisdiction is supported by existing law, and therefore, the circuit court erred in finding that she frivolously pursued her claims. *See* S.C.Code Ann. § 15–36–10(J) (stating the provisions of the FCPSA "shall not apply where an attorney or pro se litigant establishes a basis to proceed with litigation, or to assert or controvert an issue therein, that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of the existing law."). On the other hand, Respondents argue that the circuit court acted within its discretion in finding that a reasonable attorney under the same circumstances would believe that under the facts, Appellant's claim was unwarranted under existing law, and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law.

Appellant's argument concerning sanctions hinges on the validity of the Summary Judgment Order. In this respect, Appellant argues that sanctions were not warranted under the FCPSA where summary judgment was inappropriate as a matter of law and fact. Of course, Respondents argue that summary judgment was appropriate as a matter of law.[12]

■ Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c),

---

12. We note that in the proceedings below, the parties stipulated that the matters under consideration were matters of law for the court.

SCRCP; *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002) ("An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." (citation omitted)). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law" and "should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts." *Lanham,* 349 S.C. at 362, 563 S.E.2d at 333 (citations omitted). As in the trial court, "[o]n appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Id.* (citing *Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E.2d 447 (1976)). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.,* 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). Nevertheless, "when the evidence is susceptible of only one reasonable interpretation, summary judgment may be granted." *Brooks v. Northwood Little League, Inc.,* 327 S.C. 400, 403, 489 S.E.2d 647, 648 (Ct.App.1997) (citation omitted).

Appellant contends that her subject matter jurisdiction argument is based on a good faith or reasonable extension of the court of appeals' decision in *Lee v. Chesterfield General Hospital, Inc.,* 289 S.C. 6, 344 S.E.2d 379 (Ct.App.1986).

We agree with Respondents that Appellant made this exact legal argument in the 2005 litigation before Judge Dennis and has provided no reason why her argument is any different in this case, aside from the dates of the credentialing decisions. In fact, at the hearing on sanctions, Appellant's counsel indicated that he wanted another "bite of the apple," as he aimed to obtain a ruling by an appellate court that Judge Dennis's interpretation of *Lee* was wrong, and Appellant's interpretation was indeed correct.[13] In granting summary judgment to

---

13. At the sanctions hearing, Appellant's counsel argued:

Respondents, Judge Harrington found that "at least two prior orders entered by [Judge Dennis] in a previous case between these parties operate as res judicata and/or collateral estoppel as to this issue, and these also support the Court's decision herein."

We affirm the grant of summary judgment in favor of Respondents on the basis that Appellant is collaterally estopped from bringing this suit.

■ "Under the doctrine of collateral estoppel, when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Carman*, 317 S.C. at 6, 451 S.E.2d at 386 (citing *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal–Mart Stores, Inc.*, 304

---

Your order was issued on your interpretation [in the present lawsuit] and Judge Dennis's interpretation [in the 2005 lawsuit] of the *Lee* case. And while I fully respect that the Court has the authority to interpret these cases and issue an order, the only other order in existence that supports Your Honor's order is Judge Dennis's [order in the 2005 lawsuit], which is a circuit court order and not an appellate opinion. And we're in the Court of Appeals now for me to challenge that order, which is the proper way to do it.

. . . .

In fact, attorneys are allowed to even go against existing appellate opinion if they have a good-faith argument against it. In this case I wasn't going against appellate law. I felt that Judge Dennis was incorrect, and you felt that I was incorrect, and now we are in the Court of Appeals. That's the way the system is supposed to work. It's not a frivolous lawsuit.

. . . .

The second sanctions order [issued by Judge Dennis in the 2005 case] I'm very well aware of. And I was aware of that when I took this case which is why I did the research, I talked to other lawyers in the community to see what they thought.

And the question was, was Judge Dennis right about *Lee versus Chesterfield*. The consensus that I got was that he wasn't right about *Lee versus Chesterfield*. I don't think he was right about *Lee versus Chesterfield*.

And it does me no good to say that to anybody except to you and then to the [a]ppellate [c]ourt, which is exactly where I'm going. The case was very specifically tailored for that purpose . . . was either I'm going to convince a judge this time that I'm right about *Lee versus Chesterfield*, or I'm going to convince an appellate panel on the Supreme Court that I'm right about *Lee versus Chesterfield*, or I'm just dead wrong and everybody is going to tell me so all the way up.

S.C. 210, 403 S.E.2d 625 (1991)). "The estoppel of a judgment does not extend to matters not expressly adjudicated, and which can be inferred only by argument or construction from the judgment, except where they are necessary and inevitable inferences in the sense that the judgment could not have been rendered as it was without deciding such points." *Id.* (citing *Dunlap & Dunlap v. Zimmerman*, 188 S.C. 322, 199 S.E. 296 (1938)).

Judge Dennis rejected Appellant's *Lee* argument in the 2005 lawsuit:

> [Appellant] argues that the Court does have jurisdiction over this matter based on *Lee v. Chesterfield General Hospital*, 289 S.C. 6, 344 S.E.2d 379 (Ct.App.1986). The Court declines to adopt [Appellant's] interpretation of the *Lee* decision as applicable to the matter herein. In *Lee* the Court confirmed the decision reached in *Gowen* [sic] but found subject matter jurisdiction where [Appellant] did not seek to conduct a judicial review of internal hospital rules, but claimed that the Bylaws were imposed in furtherance of a conspiracy, the purpose of which was to injure [Appellant]. *Lee[,* 289 S.C.] at 10 [344 S.E.2d 379]. Here [Appellant] asks the Court to review the basis for the credentialing decisions and substitute its judgment for the Hospital and its review committees by determining that the credentialing decisions were made inappropriately. This is precisely the type of intervention that [the] *Strauss, Gowen* [sic], and *Wood* decisions sought to prevent.

Because Judge Dennis issued a final ruling on whether Respondents breached the Settlement Agreement with respect to privileging decisions made in 2002 and 2004 based on the *Lee v. Chesterfield* decision, Appellant is estopped from bringing the exact legal arguments against Respondents with respect to the 2006 and 2008 credentialing decisions.

Nevertheless, Appellant's argument that existing law supports her claim fails on the merits. Appellant argues that her attorney was concerned with the dismissal for lack of subject matter jurisdiction in the 2005 case, so he specifically limited the claims in this case to fall within the ambit of the *Lee* holding, "which he read as restricting the immunity granted to private hospitals from suits requesting a due process review,

rather than other types of common law claims." Therefore, Appellant contends that her claims are specifically tailored to the Settlement Agreement, and not the Hospital's by-laws. At the hearing before Judge Harrington on Respondents' summary judgment motion, Respondents again argued that the circuit court lacked jurisdiction to hear this claim under *Gowan v. St. Francis Community Hospital*, 275 S.C. 203, 268 S.E.2d 580 (1980) and its progeny. On the other hand, Appellant again argued that the facts alleged in Appellant's complaint were indistinguishable from those in *Lee*. Judge Harrington ruled in favor of Respondents, finding that *Lee* was inapplicable to this case, and stating Appellant's "claims all arise out of the peer review process at the Hospital and, as such, are not subject to judicial review."

In *Lee*, a licensed and certified physician's assistant, Lee, and a licensed physician, Newson, had been granted staff privileges to perform procedures by Chesterfield General Hospital (the hospital) for several years. *Lee*, 289 S.C. at 8, 344 S.E.2d at 380. In October 1982, Lee reapplied for privileges to perform a host of medical procedures at the hospital. *Id.* In January 1983, the hospital approved privileges to perform some of these procedures, but not all of them. *Id.* In February 1983, the hospital's board of trustees again limited Lee's privileges. *Id.* at 7, 344 S.E.2d at 381. In their complaints, Lee and Newson alleged that the hospital administrator, the hospital and other members of the medical staff conspired " 'to dominate the practice of medicine by licensed physicians in Chesterfield County' and 'to restrain and eliminate, for their own financial advantage and professional enhancement, the element of fair competition' in the practice of medicine in Chesterfield County." *Id.* at 9, 344 S.E.2d at 381. As a result, Lee and Newson alleged that they had suffered damages, including mental anguish, loss of professional reputation, and loss of trade. *Id.*

Citing *Gowan*, the court of appeals restated the general rule [14] with respect to challenging hospital staff privileging decisions:

---

14. In *Wood*, this Court explained:

It is well settled in South Carolina, and throughout the country, that it is improper for the courts to review the decisions of governing

> We agree that a private hospital is free, in the absence of controlling legislation or regulatory provisions, to decide the nature and extent of medical practice permitted to persons it grants staff privileges. Ordinarily, such decisions involve matters of expert medical judgment not subject to judicial review.

*Id.* Moreover, the court reiterated that "[a] medical professional has no right, simply because he is licensed by state authority[,] to claim unrestricted staff privileges in a hospital." *Id.* Nevertheless, that court found:

> These principles are not dispositive of the present cases, however. In ruling on the demurrers, the circuit court did not conduct a judicial review of internal hospital rules. The question to be decided is not whether the rules are valid or reasonable or medically sound, but whether the rules were imposed in furtherance of a conspiracy, the primary purpose of which was to injure the plaintiffs. If the complaints, liberally construed, allege such a conspiracy, it is irrelevant that the Hospital has the legal right to restrict staff privileges and that its rules are not subject to judicial review.

*Id.* at 9–10, 344 S.E.2d at 381.

Appellant now contends that the *Lee* decision does not stand for the proposition that a party must make a claim for civil conspiracy to avoid dismissal for lack of subject matter jurisdiction to review a hospital's staff decisions. Therefore, she contends that the Summary Judgment Order is erroneous as a matter of law because it "circumvents the clear ruling of the *Lee* Court by interpreting the opinion as meant only to apply to cases in which the [p]laintiff has alleged civil conspiracy."

---

boards of private hospitals concerning the staff privileges of practitioners. This Court adopted the majority rule many years ago in the case of *Strauss v. Marlboro County General Hospital,* 185 S.C. 425, 194 S.E. 65 (1937). In the recent decision of *Gowan v. St. Francis Community Hospital,* 275 S.C. 203, 268 S.E.2d 580 (1980), cert. denied, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980), we affirmed our view that the implementation of the regulations of a private hospital which are initiated to restrict a practitioner's practices are not subject to judicial review. We stated that we would not "depart from the longstanding principle that such action [by the hospital] is not subject to judicial review." *Gowan,* 275 S.C. at 204, 268 S.E.2d at 581 (citations omitted).

292 S.C. at 405, 356 S.E.2d at 842.

While we agree with the gravamen of Appellant's argument that *Lee* might not be limited to claims of civil conspiracy, the import of *Lee* is that any claim involving staffing decisions made by a private hospital must require review beyond the internal procedures, e.g. bylaws, of a private hospital, to fall within an exception to the general rule that courts will not delve into a hospital's internal affairs with regard to credentialing or other staffing decisions. Here, despite her attempt to characterize her claims as a challenge to the Settlement Agreement, in our view, Appellant's lawsuit constitutes another attempt on her part to get at the heart of the hospital's internal procedures and staffing decisions. At its core, Appellant's lawsuit challenges staff decisions made after the Hospital complied with the express terms of the Settlement Agreement. No review of the Hospital's decisions can be had here without reviewing the Hospital's 2006 and 2008 privileging decisions and its by-laws.[15]

■ Therefore, because Appellant again attempts to challenge the internal decision-making process of the Hospital with respect to staff credentials, which has been already adjudicated as clearly improper under our jurisprudence, Appellant's lawsuit lacked merit from the outset. Accordingly, we affirm the circuit court's grant of summary judgment to Respondents. Moreover, we find that Respondents were jus-

---

**15.** Even Appellant's complaint proclaims that Respondents breached a duty to Appellant "by attempting (successfully to date) to block [Appellant] from being able to seek review of its decision to deny her application for advancement in staff privileges *in violation of the letter and the spirit of the applicable bylaws.*" (Emphasis added). Likewise, during a later hearing, Appellant characterized the arguments contained in her complaint as follows:

[Respondents] claim[ ] that a settlement agreement executed by the parties which required that [Appellant] be reappointed to the consulting staff in 2002 precludes [Appellant] from suing in this case because she was, actually, reappointed to the consulting staff in 2002. [Respondents] misinterpret[ ] the complaint, which should be clear on its face. [Appellant] was given two rights under the former agreement. One was to be reappointed to the consulting staff in 2002 for two years. The other, as [Respondents] explain[ ] in [their] own brief, was that [Appellant] would have the right to apply for a change in status pursuant to the by-laws. *It is the denial of [Appellant's] right to apply for a change in status pursuant to the by-laws which is the basis of her claims in this case.*

(Emphasis added).

tified in seeking sanctions against Appellant here because there was clearly no "good faith argument for an extension, modification, or reversal of the existing law," especially in light of Judge Dennis's prior ruling in the 2005 lawsuit. *See* S.C.Code Ann. § 15–36–10(J).

### III. Timing

■ Despite obvious preservation issues,[16] Appellant argues that to allow the circuit court to determine whether a claim is frivolous on a motion for sanctions under the FCPSA while the order dismissing the case is under appeal creates a conflict with the South Carolina Appellate Court Rules, and causes unnecessary litigation. Appellant contends that this conflict may be resolved by requiring circuit courts confronted with this situation to stay their consideration of frivolity until after the resolution of the appeal of the underlying dispositive judgment. To the contrary, Respondents contend that the circuit court acted within its discretion by hearing Respondents' motion for sanctions after Appellant filed her notice of appeal. We agree.

Motions made pursuant to the FCPSA are post-trial motions. *See* S.C.Code Ann. 15–36–10(C)(1) (Supp.2012) ("At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous."). As such, a party has ten days after the filing of a court order to file a motion pursuant to the FCPSA. *See In re Beard*, 359 S.C. 351, 357, 597 S.E.2d 835, 838 (Ct.App.2004) (referring to motions made under the FCPSA as "post-trial motions for sanctions" and finding that the general ten-day limitation for post-trial motions applies to motion made pursuant to the FCPSA); *Pitman v. Republic Leasing Co.*, 351 S.C.

---

16. Appellant failed to raise the conflict she proposes between the South Carolina Appellate Court Rules and the FCPSA before the circuit court in either her brief opposing sanctions, at the hearing, in her proposed order, or in her motion to reconsider. *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved.").

429, 432–33, 570 S.E.2d 187, 189–90 (Ct.App.2002) ("Absent specific statutory language vesting the trial judge with continuing jurisdiction, we refuse to hold that a trial judge retains jurisdiction to consider a motion for sanctions beyond ten days after entry of the judgment. Such an interpretation would run counter to our established case law that a trial judge loses jurisdiction over a case when the time to file post-trial motions has elapsed."); *Rutland v. Holler, Dennis, Corbett, Ormond & Garner (Law Firm)*, 371 S.C. 91, 96, 637 S.E.2d 316, 319 (Ct.App.2006) ("[B]ecause a trial judge retains jurisdiction pursuant to Rule 59(e), SCRCP, to alter or amend a judgment within ten days of its issuance, a motion for sanctions would be timely if filed within ten days of judgment." (alteration in original)).[17]

Nevertheless, Appellant contends that the requirement that a motion pursuant to the FCPSA be made within ten days of a final judgment conflicts with Rule 241(a), SCACR, which provides:

As a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order, judgment, decree or decision on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree or decision. This automatic stay continues in effect for the duration of the appeal unless lifted by order of the lower court, the administrative tribunal, appellate court, or judge or justice of the appellate court. The lower court or administrative tribunal retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal.

Appellant argues that the circuit court should have awarded sanctions prior to the outcome on appeal of the order upon which the sanctions were based, or the Summary Judgment Order. However, this Court has held that the filing of a notice of appeal does not deprive the circuit court of jurisdiction to consider a timely post-trial motion. *See, e.g., Hudson v. Hudson*, 290 S.C. 215, 215, 349 S.E.2d 341, 341 (1986). For example, in *Hudson,* the order appealed was filed on March 18, 1986, and a notice of appeal was filed on March 24, 1986.

17. Appellant concedes in her brief that 10 days is the appropriate time to file a motion for sanctions.

*Id.* On March 27, 1986, timely post-trial motions were made pursuant to Rule 59(e), SCRCP. *Id.* at 215–16, 349 S.E.2d at 341. Holding "that the service and filing of a Notice of Appeal before the filing of timely post-trial motions under Rule 59 by any party does not deprive the lower court of jurisdiction to consider the motions," *id.* at 216, 349 S.E.2d at 341, the Court ordered the notice of appeal to be dismissed without prejudice as prematurely filed, *id.* at 216, 349 S.E.2d at 341–42 ("[I]n the event timely post-trial motions are filed under Rule 59, simultaneously with or subsequent to the filing of a Notice of Appeal, the appellant shall notify the Clerk of this Court in writing. Upon receipt of such notice, the appeal shall be dismissed without prejudice. Any party can appeal within ten (10) days after the order disposing of the post-trial motions. A second filing fee will not be collected from a party who previously appealed." (footnote omitted)). This way, all ancillary matters can be timely heard, and appealed, if necessary, in an efficient and wholesale manner, and not, as Appellant suggests, in a piecemeal fashion.

Accordingly, Appellant's contention that the FCPSA and the South Carolina Appellate Court Rules contain conflicting terms lacks merit, and the circuit court acted properly and well within its jurisdiction in hearing Respondents' sanctions motion, even though Appellant already had filed a Notice of Appeal in this case.

## IV. The Constitutionality of the FCPSA

■ Appellant argues that the FCPSA is unconstitutional. Respondents contend that Appellant's "everything-but-the-kitchen-sink" approach must fail her because she did not preserve her arguments for review in the circuit court and because her arguments lack merit.

We agree with Respondents that Appellant did not preserve most of her constitutional arguments for review. Appellant never argued the following to the circuit court: (1) that the FCPSA is redundant to a claim for abuse of process or a request for sanctions under Rule 11, SCRCP; (2) that the FCPSA deprives litigants of their rights to a jury trial; or (3) that the FCPSA violates the prohibition against double jeopardy. Finally, Appellant raised her argument that the FCPSA

constitutes an unconstitutional inhibition on free speech for the first time in her motion to reconsider the Sanctions Order. Therefore, we will not consider the merits of those arguments.

With respect to her due process argument, despite Respondents' assertion to the contrary, Appellant did argue this issue to the circuit court and again raised it in her motion for reconsideration of the Sanctions Order. Appellant argues that the FCPSA denies litigants procedural due process because "the *pro se* litigant or non-attorney party is held to a standard of expertise which the layperson and affected party do not possess." Respondents contend that Appellant lacks standing to bring this argument, and regardless, the FCPSA provides constitutionally adequate procedural due process.

We agree with Respondent that Appellant lacks standing to bring this argument because she is a licensed attorney in good standing with the South Carolina Bar. In addition, Appellant has been represented in this action by a licensed attorney. As such, Appellant cannot test the constitutionality of the statute from the standpoint of a pro se litigant or non-attorney party. *See United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." (citations omitted)).

## V. Sanctions

■■■ Appellant also argues that she should not be subject to sanctions because she was competently represented by counsel in these proceedings, and section 15–36–10's "reasonable attorney" standard has been met, precluding a finding of frivolity.

Under the FCPSA,

An attorney or pro se litigant participating in a civil or administrative action or defense may be sanctioned for:

(a) filing a frivolous pleading, motion, or document if:

(i) the person has not read the frivolous pleading, motion, or document;

(ii) a reasonable attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law;

(iii) a reasonable attorney presented with the same circumstances would believe that the procurement, initiation, continuation, or defense of a civil cause was intended merely to harass or injure the other party; or

(iv) a reasonable attorney presented with the same circumstances would believe the pleading, motion, or document is frivolous, interposed for merely delay, or merely brought for any purpose other than securing proper discovery, joinder of parties, or adjudication of the claim or defense upon which the proceedings are based;

(b) making frivolous arguments a reasonable attorney would believe were not reasonably supported by the facts; or

(c) making frivolous arguments that a reasonable attorney would believe were not warranted under the existing law or if there is no good faith argument that exists for the extension, modification, or reversal of existing law.

S.C.Code Ann. § 15–36–10(A)(4)(a)–(c) (Supp.2012).

To begin with, Appellant argues that she cannot be sanctioned under the FCPSA because she was represented by competent counsel in these proceedings. Under the prior iteration of the FCPSA, section 15–36–20 provided that "[a]ny person who takes part in the procurement, initiation, continuation, or defense of civil proceedings must be considered to have acted to secure a proper purpose ... if he reasonably believes in the existence of the facts upon which his claim is based and ... (2) relies upon the advice of counsel, sought in good faith and given after full disclosure of all facts within his knowledge and information which may be relevant to the cause of action...." *See* S.C.Code Ann. § 15–36–20 (2005). There is no corresponding provision in the amended version of the FCPSA. *See* S.C.Code Ann. § 15–36–10 (Supp.2012). However, the new version of the FCPSA repeatedly speaks in terms of sanctioning a "party" in addition to an attorney or

pro se litigant. *See, e.g.,* S.C.Code Ann. § 15–36–10(C)(1) (stating "[a]n attorney, party, or pro se litigant shall be sanctioned...."). Thus, we must presume that the legislature intended for a *party,* even a party represented by counsel, to be sanctionable under the FCPSA.[18] *See Vernon v. Harleysville Mut. Cas. Co.,* 244 S.C. 152, 157, 135 S.E.2d 841, 844 (1964) ("It will be presumed that the Legislature in adopting an amendment to a statute intended to make some change in the existing law.").

Appellant further contends that sanctions were unwarranted here.

Under the FCPSA:

(1) An attorney, party, or pro se litigant shall be sanctioned for a frivolous claim or defense if the court finds the attorney, party, or pro se litigant failed to comply with one of the following conditions:

(a) a reasonable attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law;

(b) a reasonable attorney in the same circumstances would believe that his procurement, initiation, continuation, or defense of the civil suit was intended merely to harass or injure the other party; or

(c) a reasonable attorney in the same circumstances would believe that the case or defense was frivolous as not reasonably founded in fact or was interposed merely for delay, or was merely brought for a purpose other than

---

**18.** The dissent would not award sanctions against Appellant alone. We disagree. We call attention to the circumstances of this particular case. In December 2009, this Court ordered all clerks of court to refuse filings from Appellant, unless she was represented by a licensed attorney (other than herself), due to her vexatious and meritless filings. *See Doe v. Duncan,* S.C. Sup.Ct. Order dated Dec. 2, 2009 (Appellate Case No. 2009–115446). Consequently, counsel graciously agreed to represent Appellant. However, Appellant drove this lawsuit (and many others) with the knowledge that she did not have a claim. As an attorney, she is familiar with the law and understands the court system, yet has continuously pursued frivolous proceedings. Thus, counsel, merely assisting her in filing papers with the court, should not also be penalized under these facts.

securing proper discovery, joinder of proposed parties, or adjudication of the claim or defense upon which the proceedings are based.

(2) Unless the court finds by a preponderance of the evidence that an attorney, party, or pro se litigant engaged in advancing a frivolous claim or defense, the attorney, party, or pro se litigant shall not be sanctioned.

S.C.Code Ann. § 15–36–10(C)(1)–(2). The sanctioning court is entitled to consider the following in awarding sanctions:

(1) the number of parties;

(2) the complexity of the claims and defenses;

(3) the length of time available to the attorney, party, or pro se litigant to investigate and conduct discovery for alleged violations of the provisions of subsection (A)(4);

(4) information disclosed or undisclosed to the attorney, party, or pro se litigant through discovery and adequate investigation;

(5) previous violations of the provisions of this section;

(6) the response, if any, of the attorney, party, or pro se litigant to the allegation that he violated the provisions of this section; and

(7) other factors the court considers just, equitable, or appropriate under the circumstances.

S.C.Code Ann. § 15–36–10(E)(1)–(7). Moreover, "[i]n determining whether sanctions are appropriate or the severity of a sanction, the court shall consider previous violations of the provisions of this section." S.C.Code Ann. § 15–36–10(F).

Nevertheless, Appellant argues that she should not be subject to sanctions under section 15–36–10(J), which provides the FCPSA "shall not apply where an attorney or pro se litigant establishes a basis to proceed with litigation, or to assert or controvert an issue therein, that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of the existing law."

Here, the circuit court sanctioned Appellant because she continued the lawsuit despite a prior ruling that the court lacked subject matter jurisdiction, despite previously receiving sanctions for arguing that the court lacked jurisdiction based

on the exact same allegations, and despite Respondents' compliance with the plain language of the Hospital's by-laws.

 Because "the decision whether to impose sanctions under the FCPSA is a decision for the judge, not the jury, it sounds in equity rather than at law." *Father v. S.C. Dep't of Soc. Servs.*, 353 S.C. 254, 260, 578 S.E.2d 11, 14 (2003) (refusing to adopt the more deferential "abuse of discretion" federal standard of review in assessing decisions to impose sanctions under the FCPSA). Therefore, an appellate court must review the findings of fact with respect to the decision to grant sanctions under the FCPSA by "taking its own view of the evidence." *Id.* (citing S.C. Const. art. V, § 5); *see also* S.C.Code Ann. § 14–3–320 (Supp.2012). However, "[t]he 'abuse of discretion' standard ... does ... play a role in the appellate review of a sanctions award." *Father*, 353 S.C. at 261, 578 S.E.2d at 14. For example, "where the appellate court agrees with the trial court's findings of fact, it reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard." *Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008) (citation omitted); *Se. Site Prep, L.L.C. v. Atl. Coast Builders & Contractors, L.L.C.*, 394 S.C. 97, 104, 713 S.E.2d 650, 654 (Ct.App.2011). "An abuse of discretion occurs where the decision is controlled by an error of law or is based on unsupported factual conclusions." *Father*, 353 S.C. at 261, 578 S.E.2d at 14.

In our view, Judge Harrington was warranted in ordering sanctions in this case, especially because Appellant, a licensed attorney, made identical legal arguments in the 2005 litigation and did not prevail on the merits. Appellant has continuously and repeatedly challenged the Hospital's credentialing decisions without any legal basis to do so, and in the process, has cost the Hospital untold amounts of time and resources in defending these claims. Therefore, we further find that Judge Harrington was warranted in enjoining Appellant from filing any future claims in the circuit court without first posting bond.

Accordingly, we affirm the award of sanctions under the FCPSA.

CONCLUSION

Based on the foregoing, both the Summary Judgment Order and the Sanctions Order are

**AFFIRMED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES.

We consolidated appeals from a 2011 order granting respondents summary judgment and from a 2012 order sanctioning the appellant pursuant to the Frivolous Civil Proceedings Sanctions Act (FCPSA).[19] I would affirm the summary judgment order but reverse the sanctions order.

Appellant is represented in this case by a well-respected member of the bar.[20] The sanctions were imposed on appellant as a party based upon a number of findings by the trial judge. As explained below, I do not find that any of the bases relied upon by the circuit court support the imposition of sanctions on appellant.

The FCPSA allows for sanctions at two different points in litigation. First, the statute provides that an attorney or pro se litigant who signs a pleading certifies that a reasonable attorney in the same circumstances would believe that under the facts his claim may be warranted by a good faith extension of the law, is not intended to harass the other party, and is not brought for any improper purpose. S.C.Code Ann. § 15–36–10(A)(1) (Supp.2012). A violation of subsection (A) may result in the lawyer or pro se litigant being sanctioned.

The second point at which the FCPSA provides for sanctions is set forth in § 15–36–10(C). Section (C) provides that

19. S.C.Code Ann. §§ 15–36–10 et seq. (Supp.2012).

20. As explained *infra* I interpret the FCSPA differently than does the majority and conclude that no sanction is appropriate against appellant who is merely a party in this case. The interpretation the Court adopts today will apply to every request for sanctions under the FCSPA, and I do not believe that we can create a special rule because a litigant is also an attorney even if that individual has a history with the court system.

after a verdict, a directed verdict, or a judgment non obstante veredicto has been entered a party,[21] an attorney, or a pro se litigant may be sanctioned if that individual "engaged in advancing a frivolous claim or defense." While subsection (A) is concerned with frivolous filings, subsection (C) permits sanctions only where it is determined, after factual findings are made, that a frivolous claim or defense was advanced. I would not find those circumstances present here.

In my view, subsection (C) permits the party herself to be sanctioned only where the evidence adduced at the trial, or submitted at summary judgment, reveals factual misrepresentations or omissions on the part of that party, not previously known to her attorney, which establish that the party's position in the litigation is frivolous. If the attorney learns of these facts but allows the claim or defense to continue, then she too is subject to sanctions under (C). Where the sanction rests upon facts known to both the lawyer and the party at the time the suit is brought, I would hold no sanction against the party alone is permissible under subsection (C).[22] Similarly, I would not read subsection (C) to authorize sanctions upon a party because her attorney's argument against legal precedent was deemed not to have been made in good faith or because the trial judge finds no substantive discovery was undertaken.

The order finds the present lawsuit restates allegations made and denied in a 2005 action. It concludes that had appellant "even cursorily reviewed her previous filings, prior Court orders, the Settlement Agreement, and the Bylaws *prior to filing this lawsuit*, it would have shown her the unreasonableness of her actions." (emphasis supplied). The order goes on to state that appellant "was in possession of or had access to the dispositive facts the 1999 federal suit complaint, the 2009 state court complaint, the Settlement Agreement, the 2005 filings, the prior Court orders, and the By-

---

**21.** I do not agree with the majority that the FCPSA "repeatedly speaks in terms of sanctioning a "party" in addition to an attorney or pro se litigant."

**22.** For purposes of my analysis, it matters not that appellant is also an attorney. She chose not to represent herself but employed an attorney who brought this suit with full knowledge of the prior proceedings and history of the parties, and was sanctioned solely in her capacity as a party.

laws—since before she filed this action." I would hold that because this ground rests on public facts known to both appellant and her attorney at the time the suit was brought, and because it punishes appellant for bringing the suit, that if a sanction were to be imposed under the FCPSA for this conduct, it must be imposed under subsection (A) on the lawyer who signed the pleadings. A member of the bar reviewed these facts and determined that he could bring the suit without running afoul of the FCPSA or Rule 11, SCRCP. Under these circumstances, no FCSPA sanction should be imposed on the party under § 15–36–10(C). The order also sanctions appellant for contending that the Settlement Agreement had been breached and then failing to produce evidence of any breach, and for failing to conduct any quasi-substantive discovery "until the eve of the summary judgment hearing. . . ." Again, these alleged delicts should be laid at the feet of the attorney and not the party.

Finally, the judge appears to have read *Lee v. Chesterfield Gen. Hosp. Inc.*, 289 S.C. 6, 344 S.E.2d 379 (Ct.App.1986) as limited to civil conspiracy claims, and to have concluded on that basis that no reasonable attorney would have argued for its extension to these facts.[23] I would not hold appellant liable for failing to anticipate that the legal argument for distinguishing the *Lee* case would be deemed not to have been made in good faith, nor would I uphold a sanction that rests, in part, on the trial judge's limited reading of the holding in *Lee*. In my view, the conclusion that it was not reasonable to argue for *Lee's* extension addresses the attorney's conduct and not the client's, and therefore I would hold it is insufficient to form the basis for sanctioning a party under subsection (C).

For the reasons given above, I would affirm the grant of summary judgment but reverse the sanction award.

---

**23.** The majority agrees with appellant that "Lee might not be [so]limited. . . ."