# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Town of Arcadia Lakes, Robert L. Jackson, Linda Z. Jackson, Robert E. Williams, Barbara S. Williams, Elizabeth M. Walker, Louis E. Spradlin, Mary Helen Spradlin, Thomas Hutto Utsey, Tony Sinclair, Aaron Small, Bette Small, Gene F. Starr, M.D., Elaine J. Starr, Sanford T. Marcus, Ruth L. Marcus, and Steven Brown, Petitioners,

Of Which Town of Arcadia Lakes is the Appellant/Respondent,

v.

South Carolina Department of Health and Environmental Control, Respondent, and Roper Pond, LLC, Respondent/Appellant.

Appellate Case No. 2017-001554

———

Appeal From The Administrative Law Court
John D. McLeod, Administrative Law Judge

———

Opinion No. 5803
Heard February 3, 2020 – Filed February 10, 2021

———

**REVERSED**

———

Amy Elizabeth Armstrong, of South Carolina Environmental Law Project, of Pawleys Island; Michael Gary Corley, of South Carolina Environmental Law Project, of Greenville; and Terry E. Richardson, Jr., of

Richardson Patrick Westbrook & Brickman, LLC, of Barnwell, for Appellant/Respondent.

Stephen Philip Hightower, of South Carolina Department of Health and Environmental Control, of Columbia, for Respondent South Carolina Department of Health and Environmental Control.

Joan Wash Hartley and W. Thomas Lavender, Jr., both of Nexsen Pruet, LLC, of Columbia, for Respondent/Appellant.

---

**HEWITT, J.:**  The order on appeal is the closing chapter of a contested case about a construction project.  The project's Developer—Roper Pond LLC—prevailed in a permitting challenge brought by the Town of Arcadia Lakes (the Town) and several individuals.  After the permitting challenge ended, the Administrative Law Court (ALC) ordered the Town to pay the Developer roughly $205,000 in attorney's fees and costs under a statute that applies when a party sues or is sued by the State or one of its political subdivisions.  The ALC also sanctioned the Town $200,000 after finding the Town brought the contested case for the purpose of delaying the project.

We reverse the ALC's judgment.  As for the award of fees and costs, the statute in question applies to "civil actions," S.C. Code Ann. § 15-77-300(A) (Supp. 2020), but a contested case before the ALC is not a "civil action."  The Developer offers many reasons why it believes the statute should apply to cases at the ALC level, but we must be faithful to the statute's plain text, we must read the statute narrowly rather than broadly, and we believe state and federal precedents support this holding.

As for the sanctions, the key part of the rule—SCALC Rule 72—authorizes the ALC to sanction a party who pursues a case "solely for the purposes of delay."  We review an award of sanctions de novo, and our review of the extensive record convinces us that the Town did not pursue this case solely for the purpose of delay.

**FACTS**

This case began more than a decade ago.  In 2008, the South Carolina Department of Health and Environmental Control (DHEC) granted the Developer coverage under a general permit and authorized land-disturbing activities on property off Trenholm Road in an unincorporated area of Richland County.  At that time, the

property was undeveloped.  The property's most visible feature was a pond covered with lily pads.

The Developer considered multiple concepts for the property, including a complex of patio homes.  The Developer ultimately decided to build—and has since built— an apartment complex on the land.  The work included excavating and lowering the lily pad pond and using the pond to manage the development's stormwater.

There was formal opposition to the project before DHEC finished reviewing the permit application.  The project is located off of Trenholm Road and across from a lake partly within the Town of Arcadia Lakes, though the lake is privately owned. Several individuals, including the Town's mayor, wrote a letter asking DHEC to reconsider its decision that the project fell within the general permit's coverage.

After DHEC declined to reconsider its decision, the Town and sixteen individual petitioners (collectively, "Petitioners") challenged DHEC's decision by filing a request for a contested case hearing with the ALC.

The grounds for Petitioners' challenge shifted as the case progressed.  Petitioners' letter to DHEC claimed a list of defects, including allegations that the permit application relied on incorrect assumptions for the project's engineering.  Petitioners' request for a contested case hearing similarly alleged a number of defects in the project's stormwater management plan and in DHEC's review process.

Petitioners' challenge at the contested case hearing was much narrower.  Petitioners focused entirely on the Developer's plan to excavate and lower the lily pad pond and abandoned altogether the alleged stormwater management deficiencies.  Petitioners argued the Developer was required to get a particular federal permit that the Developer had not secured.  Petitioners also argued—notwithstanding the absence of that federal permit—that DHEC was required under state regulations to consider the "overall project," including any effects on upstream or downstream wetlands.

The ALC tried the contested case for two days in September 2009.  This was about seven months after Petitioners filed their request for a contested case hearing.

About four months after the contested case hearing, the ALC issued a ruling finding Petitioners lacked standing to challenge DHEC's decision to approve the project. Even after finding a lack of standing, the ALC proceeded to deny Petitioners' claims on the merits.  The ALC denied Petitioners' request for reconsideration and to stay

the final order. That denial allowed the Developer to move forward with construction.

Petitioners pursued a lengthy appeal. This court affirmed the ALC's judgment. *See Town of Arcadia Lakes v. S.C. Dep't of Health & Envtl. Control*, 404 S.C. 515, 745 S.E.2d 385 (Ct. App. 2013). Our supreme court granted a writ to review this court's decision but dismissed the writ because the Developer finished the project while the appeal was pending, rendering moot any dispute about DHEC's permitting decision. *See* S.C. Sup. Ct. Order dated April 9, 2015.

In the time since our supreme court dismissed the case in 2015, the Town and the Developer have been litigating the Developer's request for fees, costs, and sanctions. The Developer filed a petition for this relief with the ALC about two weeks after the ALC refused to stay the project. No action was taken on the petition for fees and sanctions while the appeal of the permitting challenge was pending.

Then, in March 2016, the ALC conducted a hearing to decide whether an award of fees, costs, and sanctions was appropriate. The ALC issued an order in the Developer's favor in September 2016. The ALC's final order, issued in June 2017, awarded the Developer roughly $205,000 in attorney's fees and costs and imposed a $200,000 sanction on the Town.

**ISSUES**

1. Did the ALC err in ordering the Town to pay the Developer's fees and costs under section 15-77-300, commonly called "the State Action Statute?"

2. Did the ALC err in sanctioning the Town?

**STANDARD OF REVIEW**

An award of fees and costs under the State Action Statute is generally reviewed for an abuse of discretion, *Heath v. County of Aiken*, 302 S.C. 178, 182, 394 S.E.2d 709, 711 (1990), but deciding a statute's proper construction is a question of law, which we review de novo. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). We also review de novo the ALC's threshold decision to grant sanctions under SCALC Rule 72. *Pres. Soc'y of Charleston v. S.C. Dep't of Health & Envtl. Control*, 430 S.C. 200, 221, 845 S.E.2d 481, 492 (2020). If we agreed sanctions were warranted, we would review the amount of sanctions for an

abuse of discretion.  *See Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 167, 758 S.E.2d 483, 499 (2014).

**STATUTORY ATTORNEY'S FEES AND COSTS**

The key part of the State Action Statute reads:

> In any *civil action* brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:
>
> (1) the court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) the court finds that there are no special circumstances that would make the award of attorney's fees unjust.

§ 15-77-300(A) (emphasis added).  A later subsection explains the statute does not apply "to civil actions relating to the establishment of public utility rates, disciplinary actions by state licensing boards, habeas corpus or post conviction relief actions, child support actions, except as otherwise provided for herein, and child abuse and neglect actions."  S.C. Code Ann. § 15-77-300(C) (Supp. 2020).

We are convinced that the statute does not apply to contested cases while they are pending before the ALC and that the ALC may not award fees or costs under the statute.  The ALC is an administrative body and part of the executive branch.  *See* S.C. Code Ann. § 1-23-500 (Supp. 2020) (stating the ALC is "an agency and a court of record within the executive branch").  A plain reading of the words "civil action" does not encompass contested administrative cases; a civil action "is a proceeding in a judicial court, not an administrative court."  *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 926 (9th Cir. 2012).

This holding is bolstered by the General Assembly's demonstrated ability to specify when it wishes to include administrative cases in this sort of statute.  The original Frivolous Civil Proceedings Sanctions Act applied to "[a]ny person who [took] part in . . . any civil proceeding."  S.C. Code Ann. § 15-36-10 (2005), *amended by* § 15-36-10 (Supp. 2020).  The General Assembly rewrote the Sanctions Act in 2005

and specified it applies to any "civil or administrative action." § 15-36-10 (Supp. 2020). There was no similar revision to the State Action Statute when the General Assembly amended the statute in 2010. *See* Act No. 125, 2010 S.C. Acts 1104.

Indeed, the General Assembly previously considered, but did not pass, an amendment extending the State Action Statute to administrative proceedings and to agencies. H.R. 3383, 112th Leg., 1st Sess. (S.C. 1997). The sole purpose of this unenacted legislation would have been widening the State Action Statute to include administrative proceedings and proceedings involving agencies. This is not conclusive, but the fact that the General Assembly directly confronted this question and chose not to amend the statute supports our view that the statute does not already extend to administrative proceedings.

The distinction between civil and administrative cases is also bolstered by precedent. In *McDowell v. South Carolina Department of Social Services*, our supreme court held the prevailing party in an administrative case against DSS was entitled to fees and costs under the State Action Statute; however, that holding only applied to judicial review of the agency's decision, and it did not apply while the contested case remained an "administrative" case. 304 S.C. 539, 543, 405 S.E.2d 830, 833 (1991). Also, in *South Carolina Department of Consumer Affairs v. Foreclosure Specialists, Inc.*, this court found the ALC did not have the power to grant relief under a particular section of the Consumer Protection Code because the Code only authorized that particular relief in a "civil action," not in administrative actions. 390 S.C. 182, 184–87, 700 S.E.2d 468, 469–70 (Ct. App. 2010). This court specifically noted that the ALC did not have the "authority to decide civil matters or to award monetary damages in cases." *Id.* at 187, 700 S.E.2d at 470 (quoting Randolf R. Lowell, *South Carolina Administrative Practice and Procedure*, 152 (2d ed. 2008)).

Federal courts have drawn the same distinction when construing the State Action Statute's federal counterpart. *See W. Watersheds Project*, 677 F.3d at 928 (citing decisions from the Eleventh, Eighth, and D.C. Circuits). We acknowledge the federal cases are not binding, but we find their reasoning persuasive and additionally note our supreme court has looked to federal law when interpreting the State Action Statute. *See Heath*, 302 S.C. at 182, 394 S.E.2d at 711 (taking guidance from federal law for the standard of review). We also agree that because the State Action Statute is a waiver of sovereign immunity, we must read it narrowly rather than broadly. *Ardestani v. Immigration and Naturalization Serv.*, 502 U.S. 129, 137 (1991) (noting the Equal Access to Justice Act—the State Action Statute's federal analog—must be "strictly construed").

We respectfully disagree with the Developer's contention that certain exceptions in the State Action Statute support the view that the State Action Statute applies to administrative cases. Among other carve-outs, the statute says costs and fees may not be taxed in "civil actions relating to the establishment of public utility rates [and] disciplinary actions by state licensing boards." § 15-77-300(C).

Rate cases and licensing decisions have long been subject to the judicial branch's review after the Public Service Commission or licensing board has completed its review. *See, e.g.,* S.C. Code Ann. § 58-5-340 (1976) (a former statute explaining a party could seek judicial review of Public Service Commission decisions by commencing "an action in the court of common pleas for Richland County") (amended 2006); *Carroll v. Gaddy*, 295 S.C. 426, 428, 368 S.E.2d 909, 911 (1988) (noting the circuit court's review of a licensing decision under the Administrative Procedures Act). The ALC's addition to the "administrative" review process does not matter in a way that is relevant here. Under the reasoning in *McDowell*, *Foreclosure Specialists*, and the federal cases we have cited, administrative cases do not become "civil actions" until they leave the executive branch and enter the judicial branch for review.

Finally, we are aware of a small constellation of statutes that reference certain agencies' ability to seek injunctive relief by bringing "a civil action through the Administrative Law Court."[1] This use is not uniform throughout Title 40 (the title dealing with "Professions and Occupations"), and no part of the Administrative Procedures Act refers to actions in the ALC as "civil actions." As already noted, we believe the phrase "civil action" has an established legal meaning as a case in a judicial court, not an administrative court. We read these statutes as authorizing the ALC to award injunctive relief in certain instances, not as converting administrative cases to judicial cases.

For these reasons, we find the ALC erred in awarding fees and costs under the State Action Statute. Because this issue is dispositive, we decline to address the parties' remaining arguments regarding the award of fees and costs, the amount of fees and

---

[1] *See, e.g.,* S.C. Code Ann. § 40-1-210 (2011) (Department of Labor, Licensing, and Regulation), § 40-28-200 (2011) (Board of Landscape Architectural Examiners), § 40-33-210 (2011) (State Board of Nursing), § 40-47-210 (2011) (State Board of Medical Examiners), § 40-60-210 (2011) (South Carolina Real Estate Appraisers Board), § 40-63-210 (2011) (State Board of Social Workers).

costs, and the exclusion of expert witness affidavits. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when resolution of prior issue is dispositive).

**SANCTIONS**

SCALC Rule 72 allows the ALC to award sanctions if it determines "that a contested case, appeal, motion, or defense is frivolous or taken solely for purposes of delay . . . ." Merriam-Webster Dictionary defines "solely" as (1) "to the exclusion of all else," or (2) "without another." Merriam-Webster Dictionary, *Solely*, https://www.merriam-webster.com/dictionary/solely (last visited February 4, 2021). Apparently no South Carolina appellate court had issued a published opinion interpreting or applying Rule 72 until our supreme court's recent decision in *Preservation Society of Charleston*. *See* 430 S.C. at 200, 845 S.E.2d at 481.

There is no evidence in the record that the Town brought or continued the permitting challenge for the *sole* purpose of delay. Instead, there is an abundance of evidence that the Town was concerned about the project's impact on the local ecosystem, the water quality of the surrounding lakes, and whether the project might worsen existing flooding problems.

The ALC did not even find the Town brought the case for the *sole* purpose of delay. The ALC quoted the rule, but it variously described delay being the Town's "primary objective" or its "real objective." These are not the standard. Any finding that the Town was solely motivated by delay is hard to square with the fact that the Town continued litigating the case after it was clear the Town's appeal would not delay construction.

The ALC noted this challenge stayed the permit for thirteen months, but that does not diminish the point that it is hard to see how one could sensibly say delay was the Town's sole motivation when the project was completed while the Town's permitting appeal was pending. Of course, the fact that there was only a year of delay could mean a suit aimed at delay was only partially successful. A different record might support that view, but we do not think the record supports it here.

The ALC seemed to examine Rule 72 as though it applied when the litigation was wrong-headed or misguided (as opposed to abusive). Although some might say it only makes sense for developers to be able to recover when litigation makes the cost of development go up, that is neither Rule 72's function nor what it says.

We acknowledge the record contains evidence that delay was a factor in the Town's initial decision making. The Developer and the ALC chiefly relied on emails from the Town's mayor. However, those same emails directly reference concerns about water quality, stormwater management, or discussing the best ways to marshal legitimate substantive arguments against the project. There is no question the Town did not want the project built, would have loved for the Developer to abandon it, and devoted a substantial effort to discovering arguments that would stop the project from going forward. Still, the only conclusion with support in the record is that the Town brought this action at least partially based on concerns about the environment and water quality. There is no evidence the Town brought this contested case *solely* to bog the project down with pointless delay.

Because this issue is dispositive, we decline to address parties' remaining arguments regarding the amount of sanctions. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598.

**CONCLUSION**

Based on the foregoing, the ALC's award of attorney's fees and costs pursuant to the State Action Statute and the imposition of sanctions under Rule 72 of the South Carolina Administrative Law Court Rules is

**REVERSED.**

**LOCKEMY, C.J., and GEATHERS, J., concur.**