# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Phillip Francis Luke Hughes, on behalf of the Estate of Jane K. Hughes, Petitioner,

v.

Bank of America National Association, Respondent.

Appellate Case Nos. 2021-001339 and 2022-000079

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
R. Keith Kelly and Grace Gilchrist Knie, Circuit Court Judges

---

Opinion No. 28187
Heard March 28, 2023 – Filed January 17, 2024

---

## AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED

---

Bradley Davis Hewett and D. Michael Kelly, of Mike Kelly Law Group, LLC; and Jamie Nicole Smith, of South Carolina Human Affairs Commission, all of Columbia, for Petitioner.

Robert A. Muckenfuss, of Charlotte, NC; Elizabeth Marion Zwickert Timmermans and Jonathan Y. Ellis, of Raleigh, NC; and Kathryn M. Barber, of Richmond, Virginia, all of McGuire Woods LLP, for Respondent.

**JUSTICE JAMES:** This suit arises out of $795.20 in insurance premiums charged by respondent Bank of America to Petitioner's parents in connection with a home equity line of credit they obtained from Bank of America in 2006. The extraordinarily convoluted procedural history of this case ends with this consolidated opinion. Petitioner, as personal representative of the estate of Jane Hughes (his late mother), sued Bank of America for fraud, fraudulent concealment, and breach of contract accompanied by a fraudulent act. The issues are (1) whether we should overrule precedent holding the claims do not survive a party's death; (2) whether, even if these claims do survive, the claims are barred in this case by res judicata and the statute of limitations; and (3) whether the circuit court erred in ruling Bank of America's motion for sanctions pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA)[1] and Rule 11, SCRCP was premature. The first two issues stem from the court of appeals' decision in *Hughes ex rel. Estate of Hughes v. Bank of America National Association*, Op. No. 2021-UP-341 (S.C. Ct. App. filed Sept. 29, 2021). The third issue stems from the court of appeals' decision in *Hughes ex rel. Estate of Hughes v. Bank of America National Association*, Op. No. 2021-UP-354 (S.C. Ct. App. filed Oct. 13, 2021).

The circuit court (Judge Kelly) granted Bank of America's motion to dismiss all three causes of action, ruling the claims did not fall within the survival statute (S.C. Code Ann. § 15-5-90 (2005)) and therefore did not survive Jane Hughes' death, and also ruling the claims were barred by the three-year statute of limitations and by the res judicata effect of rulings in related federal court litigation. Judge Kelly also ruled the statute of limitations was not equitably tolled. The court of appeals affirmed Judge Kelly's ruling on the survival statute and did not reach the remaining issues. *Hughes*, Op. No. 2021-UP-341, at 1-2.

We granted Petitioner's petition for a writ of certiorari and granted Petitioner's motion to argue against precedent. We hold Petitioner's claims for fraud and fraudulent concealment survived the death of Jane Hughes. For a different reason, we hold the claim for breach of contract accompanied by fraudulent act also survived her death. However, we hold all three causes of action are barred by the preclusive effect of the rulings of the United States District Court, as affirmed by the Fourth Circuit in 2018. Therefore, we affirm as modified in part and reverse in part the court of appeals' decision in Op. No. 2021-UP-341.

---

[1] *See* S.C. Code Ann. §§ 15-36-10 to -100 (2005 & Supp. 2023).

Bank of America moved for sanctions in the circuit court, but the circuit court (Judge Knie) ruled the motion could not be heard until the conclusion of Petitioner's appeal of the Rule 12(b)(6) dismissal. Bank of America appealed that ruling, and the court of appeals reversed and remanded the sanctions motion to the circuit court, holding the sanctions motion was not premature. *Hughes*, Op. No. 2021-UP-354, at 6-9. We affirm the court of appeals on that issue in Section III of this opinion.

## I.

In June 2006, John and Jane Hughes opened a home equity line of credit with Bank of America. They authorized Bank of America to automatically draft payments of principal and interest from their joint Bank of America checking account. At closing, Bank of America offered an insurance plan that would cancel loan payments in the event of disability, accidental death, or involuntary unemployment. Petitioner claims that even though Mr. and Mrs. Hughes initialed a form at closing declining the offer, Bank of America immediately began drafting $28.40 from the Hughes' checking account each month in payment of the premium for that insurance. That premium charge was itemized each month on the Hughes' bank statement, with the notation "Ad Insurance Des:XXXXXX:4374 ID: 6 R# XXXXXXX1070 Indn: Hughes Sr, John P Co ID:XXXXXX4660 Ppd."

Mr. Hughes died in 2008. In 2015, the Hughes family advised Bank of America of Mr. Hughes' death, and Bank of America refunded the premiums drafted during that roughly seven-year period. Bank of America did not, however, refund premiums of $795.20 drafted during the twenty-eight months between the 2006 closing and Mr. Hughes' 2008 death.

Mrs. Hughes died in 2015, and Petitioner was appointed personal representative of her estate. In 2015, Petitioner sued Bank of America in Spartanburg County for violation of the Truth in Lending Act (TILA),[2] breach of contract, fraud, fraudulent concealment, and breach of contract accompanied by fraudulent act. Bank of America removed the case to federal court, where Petitioner voluntarily dismissed without prejudice his claims for fraud, fraudulent concealment, and breach of contract accompanied by fraudulent act. The district court granted BOA's motion to dismiss Petitioner's TILA and breach of contract claims, finding Petitioner "fail[ed] to dispute [he] neglected to file [his] lawsuit before the pertinent statutes of limitations expired. Instead, [he relies] on the doctrine of equitable tolling to argue [his] claims are timely." *Hughes ex rel. Est. of*

---

[2] *See* 15 U.S.C. §§ 1601-1667f.

*Hughes v. Bank of Am., Nat'l Ass'n*, No. 7:15-5083, 2017 WL 569847, at *2 (D.S.C. Feb. 13, 2017).  The district court rejected Petitioner's equitable tolling argument, and the Fourth Circuit affirmed in an unpublished opinion.  *Hughes ex rel. Est. of Hughes v. Bank of Am. Nat'l Ass'n.,* 697 F. App'x 191 (4th Cir. 2017).  The United States Supreme Court denied certiorari.  *Hughes ex rel. Est. of Hughes v. Bank of Am. Nat'l Ass'n*, 583 U.S. 1103 (2018).

In 2017, while Petitioner's appeal to the Fourth Circuit was pending, Petitioner commenced the instant litigation against Bank of America in Spartanburg County, asserting claims for fraud, fraudulent concealment, and breach of contract accompanied by fraudulent act (the three claims Petitioner voluntarily dismissed in federal court).  Bank of America moved to dismiss the action for failure to state a claim upon which relief can be granted.  *See* Rule 12(b)(6), SCRCP.  As noted above, Judge Kelly granted the motion to dismiss, finding none of Petitioner's claims survived Mrs. Hughes' death, the claims were barred by res judicata, the three-year statute of limitations had expired for all three claims, and equitable tolling of the limitations period did not apply.

Petitioner appealed, and our court of appeals affirmed Judge Kelly's ruling that Petitioner's claims did not survive Mrs. Hughes' death.  *See Hughes*, Op. No. 2021-UP-341, at 1-2.  Finding that holding was dispositive, the court of appeals did not address the issues of res judicata, the expiration of the statute of limitations, or equitable tolling.  Bank of America raises these three issues to this Court as additional sustaining grounds.

As he did in the federal litigation, Petitioner contends the three-year statute of limitations for his three current causes of action was equitably tolled for two basic reasons: (1) Bank of America's fraudulent concealment of its debiting of the Hughes' joint checking account for the insurance premiums, and (2) Mrs. Hughes' alleged blindness, mental decline, and other health problems.  In the federal litigation, the district court considered and rejected both arguments as a basis for invoking equitable tolling, and the Fourth Circuit affirmed.  On the first point, Petitioner emphasizes the notation Bank of America placed beside each checking account entry for the premium: "Ad Insurance Des:XXXXXX:4374 ID: 6 R# XXXXXXX1070 Indn: Hughes Sr, John P Co ID:XXXXXX4660 Ppd."  On the second point, Petitioner's affidavit filed in the federal litigation is in the record.  In that affidavit, Petitioner stated that "[i]n the years leading to her death in 2015," Mrs. Hughes underwent major heart surgery, suffered from dementia, suffered from cataracts, and underwent eye surgery.  Petitioner swore Mrs. Hughes' poor eyesight rendered her unable to read documents "for several years prior to her death" in 2015.  He similarly stated in the affidavit that Mrs. Hughes' physical and mental ailments rendered her

unable to read or understand her monthly bank statements "in the years prior to her death." This vague time frame referenced by Petitioner in his federal court affidavit—the "years prior to her death"—is consistent with Petitioner's allegations in his complaint in this action that Mrs. Hughes was age 85 at the time of the closing and that she suffered from impaired cognition, psychosis, lack of decisional capacity, blindness, and heart problems "in the years subsequent to June 2006." Even though Mrs. Hughes' alleged cognitive deficit or lack of capacity has always been the linchpin of Petitioner's equitable tolling argument, at no time has Petitioner alleged with any specificity when Mrs. Hughes' cognitive deficit or mental capacity issues manifested themselves.

Two days after Petitioner filed his notice of appeal from Judge Kelly's order, Bank of America timely moved for sanctions in the circuit court. As noted above, Judge Knie ruled the sanctions motion could not be heard until Petitioner's appeal from Judge Kelly's ruling was concluded. The court of appeals reversed. *Hughes*, Op. No. 2021-UP-354, at 9.

## II.

### A. The common law and the survival statute

Before the enactment of the survival statute over a century ago, the common law dictated whether a cause of action survived the death of either the wronged or the wrongdoer. A tort action—of which fraud is one—is a cause of action ex delicto. "Under the rule of the common law, the only causes of action that do not survive the death of either party, plaintiff or defendant, are causes of action ex delicto." *Page v. Lewis*, 203 S.C. 190, 193, 26 S.E.2d 569, 570 (1943). Consequently, an action ex contractu—one based in contract—survived at common law.

The common law prohibition of the survival of tort actions was "partially abrogated" by the 1905 amendment of the survival statute, which provided "any and all injuries to the person or to personal property" survived the deaths of either party. *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 564, 564 S.E.2d 94, 97 (2002); *see Mattison v. Palmetto State Life Ins. Co.*, 197 S.C. 256, 261-62, 15 S.E.2d 117, 119 (1941). Except for minor grammatical changes, the survival statute has remained intact since 1905. The statute now provides:

> Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal

representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding.

S.C. Code Ann. § 15-5-90 (emphasis added).

Petitioner argues we should overrule South Carolina case law holding that a fraud cause of action does not fall within the survival statute. Before we discuss that issue with respect to fraud and fraudulent concealment, we will briefly address whether Petitioner's cause of action for breach of contract accompanied by a fraudulent act falls within the survival statute.

### B. A cause of action for breach of contract accompanied by a fraudulent act survives the death of the parties

Bank of America rightly acknowledges that an action for breach of contract survives death under the common law. Bank of America argues a cause of action for breach of contract accompanied by a fraudulent act does not survive because it is "fraud-based." We disagree. As we noted in *Smith v. Canal Ins. Co.*, "[t]here is no cause of action distinct from breach of contract for breach of contract accompanied by a fraudulent act." 275 S.C. 256, 260, 269 S.E.2d 348, 350 (1980). "An action for breach of contract accompanied by a fraudulent act is an action ex contractu, not ex delicto." *Peeples v. Orkin Exterminating Co.,* 244 S.C. 173, 178, 135 S.E.2d 845, 847 (1964) (first citing *Cain v. United Ins. Co.*, 232 S.C. 397, 102 S.E.2d 360 (1958); and then citing *Ross v. Am. Income Life Ins. Co.*, 232 S.C. 433, 102 S.E.2d 743 (1958)). Therefore, Petitioner's contract-based cause of action for breach of contract accompanied by a fraudulent act survives under the common law and is not impacted by the survival statute. We will further discuss the viability of this cause of action under the facts of this case when we address the issue of res judicata.

### C. Common law principle that a tort action for fraud does not survive

As background to our discussion of whether a fraud action falls within the scope of the survival statute, we address the common law principle that a fraud and deceit action does not survive the death of either the victim or the perpetrator.

Of course, fraud and fraudulent concealment are tort actions. Under the common law, tort actions did not survive the death of either the victim or the tortfeasor. Our case law does not explain <u>why</u>. The decisions simply say it is so. For example, in *Chaplin v. Barrett*, the Court noted:

We have seen the right of action for the breach of a contract upon the death of either party, in general survives against the executor or administrator of each; but in the case of torts, where the action must be in form ex delicto, for the recovery of damages, and the plea is not guilty, the rule at common law was otherwise.

46 S.C.L. (12 Rich.) 284, 284-85 (1859).

Professors Dobbs, Hayden, and Bublick have commented on the absence of an explanation for this common law principle:

[Under the common law], personal actions die with the person. The common law [held] . . . that the death of either the tortfeasor or the victim eliminated all tort claims. In particular: (1) If the tort victim died, his cause of action was at an end. His estate had no cause of action. (2) If the tortfeasor himself died after committing a tort against his victim, the victim's claim died as well. (3) If the victim died, her survivors had no independent claim of their own against the tortfeasor for the loss of their support or for their grief and sorrow.

2 Dan B. Dobbs et al., The Law of Torts § 372, at 501 (2d ed. 2011) (footnotes omitted). The authors noted "[t]here has never been any good explanation for all these rules" and then commented,

However, an historical explanation for some of the rules can be found in primitive English law. The English idea was that there was no private tort action for a felony because the tort action merged in the felony, which was to say that the felon's property was forfeited to the Crown, which was unwilling to share any of the assets with the felon's victim.

*Id*. at n. 4. Indeed, Black's Law Dictionary defines the term "ex delicto" as "[a]rising from a crime or tort." *Ex delicto*, Black's Law Dictionary (11th ed. 2019).

Similarly, it is stated in Prosser and Keeton on Torts:

The historical reasons for the rule that personal torts died with the person of either the plaintiff or the defendant are obscure. Probably they derive from a day when little distinction was drawn between tort and crime; death of the defendant minimized the capacity of the law to exact punishment, and the death of the plaintiff minimized the need to substitute tort damages for vengeance. These grounds have, of course,

disappeared with the establishment of tort as a separate branch of law with emphasis on compensation as well as punishment . . . .

W. Page Keeton et al., Prosser & Keeton on Torts § 126, at 942 (5th ed. 1984) (footnotes omitted).

We decided *Page v. Lewis* in 1943. 203 S.C. 190, 26 S.E.2d 569. We acknowledged that an <u>equity</u> action for cancellation of a fraudulent real estate conveyance <u>did</u> survive death under the common law. We concluded that if the action were not to survive the defrauded person's death, the "perpetrator of the outrage could openly proclaim his own guilt without any fear of having to disgorge his ill gotten gains. To state such a proposition is to refute it." *Id.* at 196, 26 S.E.2d at 571; *see Hughey v. Mooney*, 282 S.C 597, 600-02, 320 S.E.2d 475, 476-77 (Ct. App. 1984) (discussing *Page v. Lewis*). This rationale arguably extends to an at-law fraud action. However, as we will now discuss, an action at law for fraud and deceit <u>does</u> fall within the survival statute; therefore, we need not consider abolishing the common law principle that such a cause of action does not survive death.[3]

**D. Does a fraud action fall within the language of the survival statute?**

Bank of America argues *Faircloth v. Finesod*, 938 F.2d 513 (4th Cir. 1991) sufficiently explains why our legislature chose not to include fraud actions within the survival statute. In *Faircloth*, the Fourth Circuit considered an equal protection challenge to the survival statute and held there was a rational basis for the General Assembly drafting the survival statute to allow fraud-based equitable rescission claims—but not common law fraud claims—to survive:

> The "rational basis" for the distinction is the real issue, and the basis posited by appellant is enough. Appellant argues that fraud is a tort that requires a special quality of proof, and the states of mind of the victim (*e.g.,* whether he knew the statement was false, relied upon it, and was justified in so relying) and the perpetrator are especially vital. Appellant asserts that a legislature could rationally conclude that the difficulty and potential unfairness of proving the state of mind of a dead party to a fraudulent transaction justified excepting fraud from the survival statute. In rebuttal, Faircloth points out that equitable rescission claims based on fraud do survive in South Carolina. *Page v.*

---

[3] Over time, the common law rule that an at-law fraud action does not survive death became the common law "exception" to the broad scope of the survival statute.

*Lewis,* 203 S.C. 190, 26 S.E.2d 569 (1943). Faircloth's argument has some merit, though we think it rational to distinguish between a common-law fraud action (in which consequential and punitive damages are available) and a rescission claim based on fraud (where restoration of the status quo ante is the entire remedy), and to allow only the less expansive remedy where a party is dead.

938 F.2d at 517 (footnote omitted). As we will explain, *Mattison*— and subsequent cases addressing the survival of a fraud action—were wrongly decided; therefore, the Fourth Circuit's reasoning is of no import. In any event, while there is indeed a "special quality of proof" inherent in a fraud cause of action, nothing in the way of legislative history or otherwise indicates the General Assembly purposefully excluded a fraud action from the survival statute.

Bank of America argues other "special concerns" justify the conclusion fraud does not fall within the survival statute:

[T]his action is, in fact, exactly the kind that raises the special concerns surrounding fraud. [Petitioner's] parents, not him, were the ones who signed the relevant paperwork, met with [Bank of America] employees, and were charged for LPP coverage. Even if [Petitioner] could identify a fraudulent statement that was made to his parents—and he has not— [Bank of America] would be unable to examine whether [Petitioner's] parents knew that statement was false or actually (and justifiably) relied on it. Evidence central to [Petitioner's] fraud-based claims disappeared when his parents died. Precluding such claims from the survival statute thus makes perfect sense here.

As was the Fourth Circuit's reasoning in *Faircloth*, Bank of America's rationale is based on the assumption that the survival statute excludes fraud actions; again, as we will discuss below, *Mattison* and its progeny were wrongly decided. In any event, if the death of an alleged fraud victim prevents her estate from proving the elements of a fraud claim, those proof problems are in the lap of the estate, not the defendant. However, the possibility of proof problems is not a sufficient reason to bar outright the survival of the fraud claim.

We are finally at the point in this opinion where we explain, if possible, South Carolina case law on the issue of the survival of an action for fraud and deceit. In 1941, we first addressed the question in *Mattison v. Palmetto State Life Ins. Co.* With no analysis, we held a cause of action for "taking and carrying away [an insurance contract] . . . with intent to cheat and defraud [the] plaintiff's

intestate . . . . does not come within either of the instances where a cause of action survives" under the survival statute. 197 S.C. at 259, 262, 15 S.E.2d at 118-19. Citing *Mattison*, this Court and the court of appeals have repeated the premise several times, again with no analysis. *See Brewer v. Graydon*, 233 S.C. 124, 128, 103 S.E.2d 767, 769 (1958); *Pamplico Bank & Tr. Co. v. Prosser*, 259 S.C. 621, 625, 193 S.E.2d 539, 540 (1972); *Ferguson*, 349 S.C. at 563-64, 564 S.E.2d at 97; *Hughey v. Mooney*, 282 S.C. 597, 602, 320 S.E.2d 475, 477 (Ct. App. 1984); *Brailsford v. Brailsford*, 380 S.C. 443, 449, 669 S.E.2d 342, 345 (Ct. App. 2008); *Bennett v. Carter*, 421 S.C. 374, 383, 807 S.E.2d 197, 202 (2017).

In *Ferguson*, we noted with some reservation that even though the language of the survival statute "is broad and ostensibly appears to include almost every conceivable cause of action," our case law "has continued to recognize a common law exception regarding causes of action for fraud and deceit." 349 S.C. at 564, 564 S.E.2d at 97. That reservation was understandable, as we have never articulated <u>why</u> the survival statute does not include a fraud cause of action.

Bank of America argues the question of "why" does not matter because the General Assembly ratified *Mattison* by re-enacting the survival statute in 1942, 1952, and 1962 without disturbing its operative text. Legislative inaction is one canon of statutory construction, but it is not the only one. We should not rely exclusively on legislative inaction when the underlying statute has never been fully analyzed by an appellate court. *See State v. Ramsey*, 409 S.C. 206, 213, 762 S.E.2d 15, 18 (2014) ("[L]egislative inaction cannot legitimize a flawed analysis nor does it alter our obligation to rely on the plain language of a statute."). We take this opportunity to meaningfully construe the survival statute in the fraud context for the first time.

To say a cause of action is "abated" at the time of death of a party or a potential party is to say the cause of action is no longer viable because of that death. The Supreme Court of Missouri recently addressed the issue of abatement and survival in the context of an ex-wife's motion to set aside for fraud a property settlement agreement she previously entered into with her ex-husband, who died while the motion was pending. *Olofson v. Olofson*, 625 S.W.3d 419 (2021). The *Olofson* court's reasoning is instructive as to the nature of a fraud cause of action and why it falls within our survival statute. In concluding the ex-wife's motion remained viable in spite of her ex-husband's death, the court analyzed the Missouri survival statute, Mo. St. § 537.010, which provides, in pertinent part, for the survival of "[a]ctions for wrongs done to property or interests therein." This language is essentially the same as the language of the South Carolina survival statute allowing the survival of

causes of action for "any and all injuries … to personal property." S.C. Code Ann. § 15-5-90.[4]  The *Olofson* court observed,

> The rationale behind the rule of abatement is pragmatic.  An action involving purely personal issues abates with the death of a party, except where otherwise provided by statute, because "the need to redress purely personal wrongs ceases to exist."  By contrast, an action that primarily concerns property or property interests and only incidentally implicates personal issues does not abate with the death of a party because such an action can achieve its purpose after death.  Similarly, section 537.010 provides that wrongs done to property interests survive the death of the wrongdoer, and <u>a fraud claim that involves "a loss of money due to the fraudulent actions of the defendant" is a such a wrong</u>.

*Olofson*, 625 S.W.2d at 430 (cleaned up) (emphasis added).  The *Olofson* court then noted that it "has long been the law" in Missouri that "[a]ctions for fraud and deceit are considered property torts and [are] 'more than merely personal' when they involve matters diminishing the property of the person defrauded." *Id.*

We agree with the Missouri approach.  In *Mattison* and in every succeeding case, neither this Court nor our court of appeals in following our lead has ever explained <u>why</u> a fraud action does not fall within the survival statute.  We have just said it is so.  The survival statute provides "causes of action for and in respect to . . . any and all injuries to . . . personal property shall survive . . . ."  S.C. Code Ann. § 15-5-90.  We hold this language plainly applies to actions for fraud and deceit.  "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.*

We therefore reverse the court of appeals on this issue and turn to the additional sustaining grounds raised by Bank of America.

---

[4] As used in section 15-5-90, "personal property" includes "money, goods, chattels, things in action and evidences of debt."  S.C. Code Ann. § 15-1-40 (2005).

## III.

### A. Res Judicata

Bank of America's first additional sustaining ground is that the circuit court properly ruled all three causes of action are barred by res judicata. "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co., Inc. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (citing *Sub-Zero Freezer Co. v. R.J. Clarkson Co.*, 308 S.C. 188, 417 S.E.2d 569 (1992)). Res judicata may apply if (1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the action by a court of competent jurisdiction. *Catawba Indian Nation v. State*, 407 S.C. 526, 538, 756 S.E.2d 900, 907 (2014) (citing *Johnson v. Greenwood Mills, Inc.,* 317 S.C. 248, 250-51, 452 S.E.2d 832, 833 (1994)). "[R]es judicata is more commonly referred to simply as claim preclusion." *Id.* at 537, 756 S.E.2d at 906 (citing *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 449, 511 S.E.2d 48, 57 (1998)). "Claim preclusion bars plaintiffs from pursuing a later suit where the claim (1) was litigated or (2) could have been litigated." *Id.* at 537, 756 S.E.2d at 906 (citing *Crestwood Golf Club, Inc. v. Potter*, 328 S.C. 201, 216, 493 S.E.2d 826, 835 (1997)). However, the doctrine of res judicata is not an "ironclad bar" to a later lawsuit. *Id.* at 538, 756 S.E.2d at 907.

Petitioner concedes the first and second elements of res judicata have been met. As to the third element, Petitioner argues his three current claims were not adjudicated in the federal suit because they were dismissed without prejudice in the district court. We agree with Petitioner as to his claims for fraud and fraudulent concealment, because a dismissal without prejudice in federal court litigation "does not 'operat[e] as an adjudication upon the merits,' [Fed. R. Civ. P.] 41(a)(1), and thus does not have a res judicata effect." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (second brackets added); *see McEachern v. Black*, 329 S.C. 642, 651, 496 S.E.2d 659, 663 (Ct. App. 1998) (quoting *Collins v. Sigmon*, 299 S.C. 464, 467, 385 S.E.2d 835, 837 (1989)). However, we disagree with Petitioner with respect to his claim for breach of contract accompanied by fraudulent act. Although Plaintiff voluntarily dismissed this claim without prejudice in the federal litigation, the district court dismissed <u>with</u> prejudice Petitioner's claim for breach of contract, and the Fourth Circuit affirmed that dismissal. As noted above, "[t]here is no cause of action distinct from breach of contract for breach of contract accompanied by a fraudulent act." *Smith*, 275 S.C. at 260, 269 S.E.2d at 350. Without a viable breach of contract action, there can be no action for breach of contract accompanied by a

fraudulent act. As to that cause of action, all three elements of res judicata exist—identity of the parties, identity of the subject matter, and adjudication of the claim in the former suit. Consequently, res judicata bars Petitioner's claim for breach of contract accompanied by a fraudulent act.

The question of whether res judicata bars Petitioner's fraud and fraudulent concealment claims requires a different analysis. Bank of America argues Petitioner's three claims could have been litigated in the federal litigation, but Petitioner chose to voluntarily dismiss them without prejudice. However, Petitioner's end game is to convince this Court to overrule precedent holding the survival statute does not extend to a fraud cause of action. Citing Rule 244(a) of the South Carolina Appellate Court Rules, Petitioner contends he was in a quandary in federal court, as neither the district court nor the Fourth Circuit could certify to this Court a settled question of state law. *See* Rule 244(a), SCACR ("The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States … when it appears to the certifying court <u>there is no controlling precedent</u> in the decisions of the Supreme Court." (emphasis added)). Petitioner claims a request of either the district court or the Fourth Circuit to certify the question of the interpretation of the survival statute would have been futile because *Mattison* and subsequent decisions of this Court hold a fraud and deceit action does not survive. Bank of America contends there is ample "controlling precedent" for the proposition that a fraud and deceit action does not survive, but at the same time contends Petitioner should have at least asked the federal court to certify the question of whether this Court should overrule or clarify its prior decisions.

We repeat that res judicata is not "an ironclad bar." Under the unique circumstances of this case, we hold res judicata does not bar Petitioner's fraud and fraudulent concealment actions.

### B. Statute of Limitations

Bank of America's second additional sustaining ground is that the circuit court properly ruled all three causes of action are barred by the three-year statute of limitations set forth in S.C. Code section 15-3-530(7) (2005). This limitations period "is governed by the 'discovery rule,' and does not begin to run until discovery of the fraud itself or of 'such facts as would have led to the knowledge thereof, if pursued with reasonable diligence.'" *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 300 S.C. 182, 185, 386 S.E.2d 798, 799 (Ct. App. 1989) (quoting *Grayson v. Fid. Life Ins. Co. of Phila.*, 114 S.C. 130, 135, 103 S.E. 477, 478 (1920)). In other words, "[t]he statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the

wrongful conduct." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (citing *Johnston v. Bowen*, 313 S.C. 61, 437 S.E.2d 45 (1993)). This issue was not squarely addressed by the district court or the Fourth Circuit, as both courts went directly to the issue of equitable tolling. Therefore, we address the issue for the first time.

We must construe Petitioner's complaint and determine if the facts alleged and all inferences reasonably deducible from the complaint would support a finding that Petitioner commenced this action within the three-year limitations period. *See Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). Petitioner cites five allegations in his complaint in support of his argument that dismissal of his fraud-based claims at the 12(b)(6) stage on statute of limitations grounds was error: (1) Mrs. Hughes was eighty-five years old when the line of credit transaction was closed in 2006; (2) thereafter (Petitioner does not state when), Mrs. Hughes suffered from dementia, impaired vision, decisional incapacity, and other health problems; (3) Bank of America did not inform Mrs. Hughes of the now-disputed charges until March 2015; (4) the charges were "ambiguously listed and appeared amid numerous other monthly charges" on Mrs. Hughes' Bank of America joint checking account statement; and (5) in March of 2015, Mrs. Hughes received notice (addressed to the then-late Mr. Hughes) from Bank of America that the disputed insurance plan was in effect as to Mr. Hughes.

We disagree with Petitioner. Petitioner acknowledges the charge appeared on each statement "for several years" beginning in 2006  Thus, even considering the allegations in the light most favorable to Petitioner, Mr. and Mrs. Hughes knew, or by the exercise of reasonable diligence, should have known, they were being charged $28.40 for something. It was incumbent upon them to conduct a reasonably diligent inquiry into the nature of the charge; however, they did not do so, and the limitations period expired before Petitioner commenced this action.

### C. Equitable Tolling and Collateral Estoppel

Bank of America's third additional sustaining ground is that the circuit court properly ruled the statute of limitations was not equitably tolled. As he does here, Petitioner argued in the federal litigation that even if the statute of limitations otherwise expired, it was equitably tolled, thus precluding Rule 12(b)(6) dismissal. Applying federal case law, the district court and Fourth Circuit rejected Petitioner's argument. We must determine whether the Fourth Circuit's ruling on equitable tolling collaterally estops Petitioner from relitigating the issue in this state court litigation. In Section III.A above, we discussed the role of res judicata in this case. "*Res judicata* bars relitigation of the same cause of action while collateral estoppel

bars relitigation of the same facts or issues necessarily determined in the former proceeding." *Pye v. Aycock*, 325 S.C. 426, 436, 480 S.E.2d 455, 460 (Ct. App. 1997). The doctrine of collateral estoppel precludes a party from relitigating an issue decided in prior litigation, regardless of whether the claims in the prior and instant litigation are the same. *Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 554-55, 684 S.E.2d 779, 782 (Ct. App. 2009).

For collateral estoppel to apply, it must be shown that the issue "was: (1) actually litigated in the prior action; (2) directly determined in the prior action; (3) necessary to support the prior judgment." *Id.* (citing *Beall v. Doe*, 281 S.C. 363, 369 n.1, 315 S.E.2d 186, 189-90 n.1 (Ct. App. 1984)). "The doctrine of collateral estoppel is intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the notion that it is unfair to permit a party to relitigate an issue that has already been decided." *State v. Bacote*, 331 S.C. 328, 331, 503 S.E.2d 161, 163 (1998). "Since it is grounded upon concepts of fairness, it should not be rigidly or mechanically applied." *Id.*

In support of his equitable tolling argument, Petitioner relies in part upon the same allegations in his complaint he relies upon in arguing the limitations period had not expired—Mrs. Hughes' diminished mental capacity, poor eyesight, and general poor health. In rejecting this argument, the district court found:

> The charge for the mortgage insurance appeared on the Hughes' monthly checking account statements from 2006 to 2015. Thus, any argument they failed to discover the purported wrongdoing by [Bank of America] during this period of time, although they exercised due diligence, is bereft of any merit. Assertions [Jane] Hughes "underwent major heart surgery, suffered from dementia, experienced vision impairments, including cataracts and eye surgery, and suffered a broken hip that required hospitalization and extensive rehabilitation at White Oak Manor Nursing Home in Spartanburg, South Carolina," although unfortunate, are simply insufficient to satisfy the due diligence requirement.
>
> . . . .
>
> The fact equitable tolling is to be employed sparingly is so established as [t]o make a citation to authority unnecessary. For the Court to adopt [Hughes'] position [his] claims are entitled to equitable tolling would mean statutes of limitations are inconsequential. And, of course, that is not so.

*Hughes*, 2017 WL 569847, at *2 (citation omitted).

The Fourth Circuit affirmed, citing its equitable tolling precedent:

Generally, parties "are entitled to equitable tolling only if they show that have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." *Raplee v. United States*, 842 F.2d 328, 333 (4th Cir. 2016), *cert denied*, 137 S. Ct. 2274 (2017). "Equitable tolling is reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id*. at 333. "The use of equitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Lawrence v. Lynch*, 826 F.2d 198, 204 (4th Cir. 2016).

*Hughes*, 697 F. App'x at 192-93 (cleaned up).

Petitioner also argues equitable tolling is appropriate because Bank of America fraudulently concealed the details of the monthly insurance charge on the Hughes' checking account statements. The Fourth Circuit addressed this argument as well, citing *Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.* for the proposition that when a plaintiff alleges fraudulent concealment of his cause of action by the defendant, the plaintiff seeking equitable tolling must show (1) the defendant pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim and (2) the plaintiff failed to discover those facts within the limitations period despite the exercise of due diligence. *Hughes*, 697 F. App'x at 192-93 (citing *Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). The Fourth Circuit held Petitioner did not make the required showing. *Id.* at 193. In cases in which a plaintiff contends the defendant had fraudulently concealed a cause of action, the showing required by *Supermarket of Marlington* is in accord with South Carolina law.

Petitioner contends the federal court disposition of the equitable tolling issue does not preclude consideration of the equitable tolling issue because "South Carolina's stance on equitable tolling … is more lenient than that of the federal courts" and the circuit court did not review this case under the supposedly more lenient standard. In South Carolina, the party claiming the application of equitable tolling bears the burden of establishing sufficient facts to justify its use. *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 386 S.C. 108, 115, 687 S.E.2d 29, 32 (2009) (citing *Ocana v. Am. Furniture Co.,* 91 P.3d 58, 65 (N.M. 2004)). Equitable tolling

typically applies when a litigant was prevented from timely commencing an action because of an extraordinary event beyond his control. *Hooper*, 386 S.C. at 116, 687 S.E.2d at 32 (citing *Ocana*, 91 P.3d at 66). In *Hooper*, we noted there is not an exclusive list of circumstances that justify the application of equitable tolling and it may be applied where it is justified under all the circumstances. *Id.* at 116-17, 687 S.E.2d at 33. However, the Court cautioned that equitable tolling "should be used sparingly and only when the interests of justice compel its use." *Id.* at 117, 687 S.E.2d at 33.

Petitioner highlights the allegations central to his claims—that Bank of America "deceived and defrauded a frail, elderly couple by surreptitiously charging them for a product they expressly declined" and by burying the premium charge in garbled language on monthly bank statements. Petitioner argues Mr. Hughes' death and Mrs. Hughes' mental decline, "when viewed in combination with [Bank of America's] surreptitious and illegal activities," constitute extraordinary circumstances beyond Mrs. Hughes' control. The Fourth Circuit reviewed the District Court's findings on those points and concluded that a party such as Mrs. Hughes would be entitled to equitable tolling only if she has pursued her rights diligently and extraordinary circumstances external to her own conduct prevented her from commencing the action on time. *Hughes*, 697 F. App'x at 192 (citing *Raplee*, 842 F.3d at 333). The Fourth Circuit also observed that "[t]he use of equitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id*. (citing *Lynch*, 826 F.3d at 204). This standard is consistent with what we declared in *Hooper* to be the law in South Carolina. The Fourth Circuit's affirmation of the district court's ruling on the equitable tolling issue precludes this issue from being relitigated.

### IV. Motion for Sanctions–Op. No. 2021-UP-354

Two days after Petitioner filed his notice of appeal from Judge Kelly's order, Bank of America filed a motion for sanctions, seeking $76,556.02 in attorneys' fees and costs under both the FCPSA and Rule 11, SCRCP. Citing the pending appeal, the circuit court (Judge Knie) concluded Petitioner's claims "ha[d] not yet been fully adjudicated" and therefore denied Bank of America's motion for sanctions as "untimely and premature." The court of appeals reversed, holding the motion was not "untimely."

We first note the true inquiry is whether the sanctions motion was "premature," not whether it was "untimely." With respect to the FCPSA, the sanctions motion was "timely" because it was filed within ten days after Bank of

America's receipt of written notice of the entry of Judge Kelly's order. *See Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 20, 20 n.11, 633 S.E.2d 722, 730, 730 n.11 (2006) (A motion for sanctions under the FCPSA must be filed within ten days after the notice of entry of judgment.). Bank of America seeks Rule 11 sanctions in the same motion, and the Rule 11 request for relief was also timely.[5]

Nor was Bank of America's sanctions motion premature. In *Holmes v. East Cooper Community Hospital, Inc.*, we noted a motion for sanctions is a post-trial motion, and we held "the filing of a notice of appeal does not deprive the circuit court of jurisdiction to consider a timely post-trial motion." 408 S.C. 138, 160-61, 758 S.E.2d 483, 495-96 (2014) (citing *Hudson v. Hudson*, 290 S.C. 215, 215-16, 349 S.E.2d 341, 341-42 (1986)). In *Hudson*, we took the unusual step of appending an order to our opinion. In that order we stated:

> IT IS ORDERED that in the event timely post-trial motions are filed under Rule 59, simultaneously with or subsequent to the filing of a Notice of Appeal, the appellant shall notify the Clerk of this Court in writing. Upon receipt of such notice, the appeal shall be dismissed without prejudice. Any party can appeal within ten (10) days after the order disposing of the post-trial motions. A second filing fee will not be collected from a party who previously appealed.

*Hudson*, 290 S.C. at 216, 349 S.E.2d at 341-42 (footnote omitted).

Because "[m]otions made pursuant to the FCPSA are post-trial motions", *Holmes*, 408 S.C. at 160, 758 S.E.2d at 495, our order in *Hudson* applies when a timely sanctions motion is filed after a notice of appeal is filed. In *Holmes*, we noted the procedure set forth in the *Hudson* order would allow "all ancillary matters [to] be timely heard, and appealed, if necessary, in an efficient and wholesale manner, and not . . . in a piecemeal fashion." *Id.* at 162, 758 S.E.2d at 496.

Petitioner did not notify the clerk of the court of the filing of Bank of America's sanctions motion, which would have triggered the court of appeals'

---

[5] In *Russell*, we noted the issue of the timeliness of a Rule 11 motion is different from the issue of the timeliness of a motion under the FCPSA. 370 S.C. at 20 n.11, 633 S.E.2d at 730 n.11; *see Pee Dee Health Care., P.A. v. Est. of Thompson*, 424 S.C. 520, 530, 818 S.E.2d 758, 763 (2018) ("Rule 11—unlike the FCPSA—does not contain any time limit for filing a motion for sanctions, and South Carolina appellate courts have never interpreted Rule 11 to include a specific time limit."). The distinction between the two motions as to timeliness is not an issue in this case.

dismissal of Petitioner's appeal without prejudice and the remainder of the *Hudson* procedure. Because Petitioner did not notify the clerk, the sanctions motion came before Judge Knie for hearing roughly two months after the motion was filed. Because Petitioner's appeal was pending, Judge Knie understandably refused to hear the sanctions motion. Bank of America then filed a separate appeal from that decision, and both appeals worked their way through the appellate process to this Court.

We see no reason to penalize Petitioner for not notifying the clerk of the court of appeals of the sanctions motion, as required by our order in *Hudson*. However, we take this opportunity to remind the bar of the *Hudson* procedure and the judicial economy inherent in it. If a party such as Petitioner has not notified the clerk of the appellate court of the filing of a post-trial motion, the trial court must order that party to notify the clerk of the appellate court of the post-trial motion. The appellate court must then dismiss the previously-filed appeal without prejudice, in accordance with *Hudson*.

We have reversed in part and affirmed as modified in part the result reached by the court of appeals in Petitioner's appeal from Judge Kelly's order. We remand Bank of America's sanctions motion to the circuit court for hearing. In so doing, we join in the court of appeals' pronouncement that our remand of this motion is not a decision on "the *merits* of that motion." *Hughes*, Op. No. 2021-UP-354, at 9.[6] Of course, Bank of America is not entitled to sanctions on the portion of its motion emphasizing this Court's now-overruled precedent that fraud actions do not fall within the survival statute.[7]

---

[6] Petitioner argues sanctions are not warranted under either the FCPSA or Rule 11. Petitioner further argues that even if sanctions are warranted, Bank of America's demand for attorney's fees and costs of $76,556.02 incurred at the very early Rule 12(b)(6) stage is outrageous. The circuit court must resolve these issues on remand.

[7] We overrule the following cases to the extent they hold a fraud cause of action does not survive the death of the alleged victim or the alleged perpetrator: *Mattison v. Palmetto State Life Ins. Co.*, 197 S.C. 256, 15 S.E.2d 117 (1941); *Brewer v. Graydon*, 233 S.C. 124, 103 S.E.2d 767 (1958); *Pamplico Bank & Tr. Co. v. Prosser*, 259 S.C. 621, 193 S.E.2d 539 (1972); *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 564 S.E.2d 94 (2002); *Bennett v. Carter*, 421 S.C. 374, 807 S.E.2d

## Conclusion

Although Petitioner's claim for breach of contract accompanied by fraudulent act survived Mrs. Hughes' death, the claim is barred by res judicata. Petitioner's causes of action for fraud and fraudulent concealment survived Mrs. Hughes' death, but the statute of limitations expired before this action was commenced. The federal district court ruled equitable tolling does not apply, and the Fourth Circuit affirmed. Petitioner is precluded from relitigating the equitable tolling issue in this case. We therefore reverse in part and affirm as modified in part the court of appeals' decision in *Hughes*, Op. No. 2021-UP-341. We affirm as modified the court of appeals' decision in *Hughes*, Op. No. 2021-UP-354, and we remand Bank of America's sanctions motion to the circuit court for disposition.

**AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED.**

**BEATTY, C.J., KITTREDGE, FEW, and HILL, JJ., concur.**

---

197 (2017); *Hughey v. Mooney*, 282 S.C. 597, 320 S.E.2d 475 (Ct. App. 1984); *Brailsford v. Brailsford*, 380 S.C. 443, 669 S.E.2d 342 (Ct. App. 2008).